UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| In re: | |
|---|---|
| | Case No. 23-21459-rmb |
| Dionandrea R. Bolden, | |
| | Chapter 13 |
| Debtor. | |

| Patrick S. Layng, United States Trustee | |
|---|---|
| | Adversary No. 23-02067 |
| Plaintiff, | |
| v. | |
| Jeanine L. Jackson | |
| Defendant. | |

## POST-TRIAL DECISION

This adversary proceeding involves allegations by the United States Trustee that Jeanine Jackson violated 11 U.S.C. § 110 when she provided bankruptcy petition preparer services to several debtors in this district. Jackson, proceeding pro se, generally denied the allegations in the U.S. Trustee's complaint. The Court held a three-day trial on May 29-31, 2024, during which the Court heard testimony from several witnesses and argument from counsel for the U.S. Trustee and from Jackson. This decision is the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## FINDINGS OF FACT

Counsel for the U.S. Trustee presented testimony from witnesses Christopher Kemp, Rebecca Quiroz, Douglas Mann, Benjamin Yurk, Ayeshia Riley, and Jeanine Jackson. Jackson was given the opportunity to cross examine each witness presented by the U.S. Trustee. Jackson testified at length in response to questions from counsel for the U.S. Trustee. She also provided

lengthy narrative testimony on her own behalf. The Court finds the following facts based on the witness testimony and the exhibits admitted at trial.

### *Jeanine Jackson and Her Work as a Bankruptcy Petition Preparer*

Jackson herself has filed at least 16 bankruptcy cases in this district since 2003. Only two resulted in a discharge. The other 14 were dismissed for a variety of reasons.[1]

Jackson began working as a bankruptcy petition preparer in this district in 2017. Between 2017 and 2024, Jackson has been disclosed as the bankruptcy petition preparer in approximately 185 cases in this distrct.[2] Jackson testified to her belief that the cases she worked on have a success rate (*i.e.*, the debtor received a discharge) of over 90%. The Court's review of those cases indicates that more than 50 were dismissed or otherwise closed without a discharge.

Jackson also testified that she served as a bankruptcy petition preparer in cases filed in Illinois, Georgia, and Texas, mostly for family members. Other than a motion that Jackson prepared for her daughter in a case filed in the Southern District of Texas, no specific evidence

---

[1] Jackson stated several times at trial that she had filed many bankruptcy cases in this district. The Court can take judicial notice of its own docket. *In re Potter*, 616 B.R. 745, 749 n.3 (Bankr. N.D. Ill. 2020) ("A bankruptcy court can take judicial notice of its own docket."); *see also Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002) ("The bankruptcy judge did not err by taking judicial notice of the schedules filed in the underlying bankruptcy proceeding.").

The Court's review of its electronic docket indicates that Jackson filed the following cases: Case No. 03-38274 (chapter 13 filed 12/18/2003; dismissed 2/1/2005); Case No. 05-40553 (chapter 7 filed 10/12/2005; discharge entered 4/7/2006); Case No. 07-26640 (chapter 13 filed 8/24/2007; dismissed 10/22/2007); Case No. 07-28445 (chapter 13 filed 10/24/2007; dismissed 9/18/2008); Case No. 08-30184 (chapter 13 filed 9/18/2008; dismissed 10/27/2008); Case No. 09-23059 (chapter 13 filed 3/16/2009; dismissed 4/29/2009); Case No. 09-26331 (chapter 13 filed 5/5/2009; dismissed 6/12/2009); Case No. 10-23759 (chapter 13 filed 3/17/2010; dismissed 4/14/2010); Case No. 11-30121 (chapter 13 filed 6/27/2011; dismissed 9/4/2012); Case No. 13-22561 (chapter 13 filed 3/7/2013; dismissed 11/18/2013); Case No. 14-26849 (chapter 7 filed 5/29/2014; discharge entered 9/30/2014); Case No. 15-21961 (chapter 13 filed 3/4/2015; dismissed 10/21/2015); Case No. 16-25272 (chapter 13 filed 5/23/2016; dismissed 9/2/2016); Case No. 17-24482 (chapter 13 filed 5/8/2017; dismissed 11/14/2017); Case No. 18-29549 (chapter 13 filed 10/9/2018; dismissed 7/15/2019); and Case No. 22-23044 (chapter 7 filed 7/11/2022; dismissed 4/5/2023).

[2] Evidence regarding the number of cases was not presented at trial. The Court performed a review of its docket for cases in which Jackson is listed as the bankruptcy petition preparer. A list of the cases and their dispositions is included as an Appendix to this decision.

was presented by either the U.S. Trustee or Jackson regarding the number of these cases or the work that Jackson performed.

Jackson was often cagey and evasive when asked about her processes for assisting debtors as part of her bankruptcy petition preparer work. The Court finds that the following facts are true as to the specific cases and debtors discussed below. The Court further finds that the following facts are likely true as to the many other debtors for whom Jackson performed work as a bankruptcy petition preparer.

The fee of a bankruptcy petition preparer is capped at $75.00 in this district. If a bankruptcy petition preparer wants to charge more than that, she must request approval from the court. Jackson generally charges debtors $75 for her services. She also testified at trial that sometimes her clients do not have enough money to cover their filing fee, and that she will provide them with money to pay the fee. She generally provides funds to family members or close friends for whom she has worked as a bankruptcy petition preparer.

Jackson prepares petitions, schedules, and statements for her clients, which is expected for a bankruptcy petition preparer. The U.S. Trustee alleged that Jackson also drafted letters, motions, and other legal documents for debtors, which is not expected for a bankruptcy petition preparer because most such documents cannot be drafted for a debtor without providing the debtor legal advice.

Jackson has distinctive handwriting. She handwrites most of the documents that she prepares as a bankruptcy petition preparer. Jackson admitted to writing several documents that are in the record. These handwritten documents include: (1) petition and schedules for Dionandrea Bolden, Ex. 2 at 1-76; (2) Adversary Proceeding Cover Sheet for Monique Owens, Ex. 40 at 1-2; (3) Schedule D and Schedule E/F for Darthaniel Holmes, Ex. 3 at 29-36; (4) Form 122A-2 Chapter 7 Means Test for Darthaniel Holmes, Ex. 3 at 64-73; (5) Schedule E/F for Joe

Langford, Ex. 6 at 49-56; (6) Schedule D and Schedule E/F for Ryan Crenshaw, Ex. 7 at 21-40; (7) Schedule I and J for Christopher Kemp, Ex. 9 at 27-31; and (8) September 26, 2022 letter in the Kendra Reddic case, Ex. 17 at 16.

The petitions, schedules, and other documents in cases for which she was the bankruptcy petition preparer all include similar handwriting. Below the Court makes findings that Jackson drafted specific handwritten documents. The Court bases its findings on its comparison of the documents that Jackson admitted to writing with the documents that the U.S. Trustee argues she wrote. *See* Fed. R. Evid. 901(b)(3); *see also, e.g.*, *In re Saenz*, 534 B.R. 276, 292 n.14 (Bankr. S.D. Tex. 2015), *aff'd sub nom. Saenz v. Gomez*, 899 F.3d 384 (5th Cir. 2018) ("The Federal Rules of Evidence contemplate that a trier of fact may compare a handwriting sample with an authenticated sample to determine whether it is genuine *without* the help of expert testimony.") (emphasis in original).

Jackson has also filed typewritten letters and other documents. The record indicates that Jackson drafted and filed the following typewritten letters: (1) a letter filed on June 16, 2023 on her own behalf in the Dionandrea Bolden case, Ex. 2 at 119-21; (2) a letter filed on June 12, 2023 on her own behalf in the Darthaniel Holmes case, Ex. 3 at 74; (3) a letter filed on July 14 on her own behalf in the Darthaniel Holmes case, Ex. 3 at 84-85; (4) a letter filed on January 13, 2023 in Jackson's own case, Ex. 8 at 120; and (5) a letter filed on February 17, 2023 in Jackson's own case, Ex. 8 at 131-32.

Jackson has also filed other typewritten documents, such as pleadings and motions, that are not in the letter format. The record indicates that Jackson drafted and filed the following typewritten documents: (1) a motion related to a Rule 2004 examination requested by the U.S. Trustee in the Darthaniel Holmes case, Ex. 3 at 75; (2) a response related to the Rule 2004 examination in the Holmes case, Ex. 3 at 80-83; (3) an objection to the U.S. Trustee's Rule 2004

examination request in Jackson's own case, Ex. 8 at 82-84; (4) an amended objection to the Rule 2004 examination request in Jackson's case, Ex. 8 at 112-118; and (5) a motion to extend time in Jackson's case, Ex. 8 at 123-25.

There are several consistencies among the typewritten documents drafted by Jackson. Jackson often formats her letters by including the date at the top, the debtor's name and case number, a subject line, and a salutation. The letters also frequently include a "CC" at the bottom with the name of an interested party, such as the movant if the letter is responding to a motion. This is, of course, a standard business letter format, and likely a format that Jackson was taught to use during her coursework at the Milwaukee Area Technical College (MATC). But the letters that the Court typically receives from pro se debtors are not written in this format. Pro se parties often do not include subject lines and very rarely if ever include a "CC" to the movant. Jackson also tends to begin letters, both typewritten and handwritten, with "Hello, this is" or "my name is . . . ." This opening language is not unique to Jackson, but the Court finds that letters drafted by Jackson almost always begin this way.

Jackson also frequently uses the phrase, "if the court would take judicial notice." *See* Ex. 8 at 113, 114, 131; Ex. 13 at 2. Jackson argues that this phrase is common to court filings, but in the Court's experience, use of the phrase is rather uncommon, particularly by inexperienced pro se debtors.

In addition, the typewritten documents filed by Jackson all use the same font. The Court finds it inconceivable that a pro se debtor would follow the same format that Jackson uses for typewritten documents *and* use the same font that Jackson uses without Jackson's help.

Many of the documents that Jackson prepares are filed using the Court's after-hours drop box outside the courthouse. The documents are placed in an envelope that bears Jackson's handwriting with the debtor's name, the case number (unless the documents include a case-

opening petition), and a description of the document. In this district, it is the Clerk's practice to scan any outer envelope included with a paper filing in the Court's after-hours drop box, and the scanned envelope appears as the last page of the document on the docket. *See, e.g.*, Ex. 2 at 31, 50, 76, 122; Ex. 3 at 76, 87; Ex. 5 at 21, 75; Ex. 6 at 11, 29; Ex. 7 at 18, 43, 95; Ex. 8 at 121, 130; Ex. 9 at 13, 18, 46, 48; Ex. 11 at 34, 62, 95; Ex. 17 at 18.

Jackson testified that she tells debtors she is not a lawyer and cannot provide legal advice. However, she does tell them that she has a legal studies degree and that she has significant experience filing her own bankruptcy cases and bankruptcy cases on behalf of others. Jackson attended MATC and received an Associate's degree in legal studies. As part of her coursework, Jackson prepared bankruptcy schedules using Best Case software. Jackson believes this experience makes her knowledgeable about the information that must be included on various bankruptcy forms.

Jackson also tells debtors that she knows several lawyers, and that if there is a legal question she can ask her attorney friends and relay the information to the debtors. Jackson claims to have several friends who are attorneys, and she believes that one or two of her instructors at MATC are sufficiently knowledgeable to provide her with advice regarding her bankruptcy petition preparer work. Jackson repeatedly rattled off several names of attorneys and instructors in response to questions at trial. Her testimony was not clear as to the identity of any of them, so the Court makes no findings regarding their identity, which is irrelevant to the Court's findings and conclusions. Jackson believes her experience along with her access to ask questions of attorneys is valuable to debtors. Ayeshia Riley confirmed that Jackson told her she knew several attorneys, and Riley agreed that she chose to use Jackson's services in part because of Jackson's access to attorneys to ask legal questions about Riley's bankruptcy case.

Jackson admitted to helping prospective debtors choose whether to file bankruptcy and whether to file a chapter 7 or chapter 13 bankruptcy. She said that she regularly uses Pacer to look up a prospective debtor's social security number. If the person has received a chapter 7 discharge in the last eight years, she tells them that they cannot file a chapter 7. She has told prospective debtors they may be able to file a chapter 13 case if, in Jackson's opinion, they are not eligible for a chapter 7 discharge.

Jackson also admitted to advising debtors regarding the deadlines for them to pay their filing fee and to file their schedules after the petition date. She said that, based on her experience, a chapter 13 debtor has 30 days to pay the filing fee. She is also aware that the general practice in this district is to afford chapter 7 debtors approximately 90 days to pay the filing fee in three installments. Jackson said that she learned during a case her daughter filed in the Southern District of Texas that debtors have 45 days to file the required statements and schedules. She advised at least one debtor of her belief that this deadline applies in all cases.

Jackson testified to her belief that she can provide many or all of the same services that an attorney would provide to a debtor. At one point Jackson stated during her testimony that she thought she was offering a service worth "two to three thousand dollars."

Jackson testified that she thought she was complying with all the rules for bankruptcy petition preparers because no one complained about her work between an October 2018 hearing discussed below and the filing of this adversary proceeding in June 2023.

Jackson testified that she construed the U.S. Trustee's allegations in this adversary proceeding to mean that she simply cannot prepare several documents for clients, including an application to pay the filing fee in installments, Schedule C, Official Forms 122A-1 and 122C-1, and Statement of Intention. The exhibits introduced at trial indicate that Jackson's handwriting no longer appears on those documents for cases filed after the U.S. Trustee filed his complaint in

this adversary. *See* Ex. 5 at 52-53 (Riley Schedule C filed 3/22/2024); Ex. 5 at 59-62 (Riley Form 122C-1 filed 3/22/2024); Ex. 6 at 9-10 (Langford Statement of Intention filed 2/26/2024); Ex. 6 at 12 (Langford Application to Pay the Filing Fee in Installments filed 2/26/2024); Ex. 6 at 26-28 (Langford Form 122A-1 filed 3/12/2024); Ex. 6 at 47-48 (Langford Schedule C filed 3/22/2024); Ex. 7 at 19 (Crenshaw Application to Pay the Filing Fee in Installments filed 3/22/2024); Ex. 7 at 68-69 (Crenshaw Schedule C filed 4/16/2024); Ex. 7 at 90-92 (Crenshaw Form 122A-1 filed 4/16/2024); Ex. 11 at 35 (Sanders Application to Pay the Filing Fee in Installments filed 2/16/2024); Ex. 11 at 38-39 (Sanders Schedule C filed 3/12/2024); Ex. 11 at 57-59 (Sanders Official Form 122A-1 filed 3/12/2024); Ex. 11 at 60-61 (Sanders Statement of Intention filed 3/12/2024). As explained below, the Court concludes that Jackson instructed her clients on how to fill out the forms even if she no longer filled them out herself.

The Court heard testimony from Douglas Mann, a chapter 7 panel trustee, and Rebecca Quiroz, a staff attorney for chapter 13 standing trustee Rebecca Garcia. Mann and Quiroz testified regarding email correspondence that their offices received from Jackson with documents and questions regarding cases for which Jackson was the bankruptcy petition preparer. *See* Exs. 29 & 30. When asked about these communications, Jackson responded that the debtors had asked her to email documents to the trustees. As Mann explained, it is not unusual for a trustee to receive documents from an email address that does not belong to the debtor, because many debtors are not technologically proficient. It is, however, outside the purview of a bankruptcy petition preparer to ask questions of trustees for the purpose of providing advice and information to a debtor.

Several times throughout the trial Jackson mentioned sorting through documents brought to her by debtors, she mentioned that she herself took steps to ensure that debtors submitted all the required statements and schedules, and she said that she stopped doing chapter 13 cases

because they are "too complicated." After the trial, Jackson submitted a letter referring to two debtors' "case files." ECF No. 145. Based on Jackson's communications with the chapter 7 and chapter 13 trustees, and her testimony regarding her shepherding of cases, the Court finds that Jackson undertook tasks for debtors in addition to simply preparing documents for filing by inputting information supplied by the debtors.

The Court finds the following facts with respect to the specific debtors and cases discussed below:

### *Joseph Redzinski*, Case No. 18-26846

Less than a year after she first started working as a bankruptcy petition preparer, Jackson prepared a bankruptcy petition and schedules for Joseph Redzinski. The debtor did not attend the § 341 meeting of creditors and the trustee filed a motion to dismiss. On August 28, 2018, Jackson drafted and filed a letter on behalf of Redzinski objecting to the motion. Ex. 13 at 1. The letter was typewritten in the style of Jackson's letters discussed above. Jackson signed Redzinski's name and included her initials beside the signature. Jackson said she learned in her courses at MATC that one can sign a letter on behalf of someone else if they have the individual's permission and the signer's initials are included with the signature. *See also* Ex. 13 at 2. Redzinski's § 341 meeting was rescheduled, and during the meeting counsel for the U.S. Trustee appeared and asked questions regarding Jackson's work on Redzinski's case.

On September 11, 2018, Jackson filed a letter on her own behalf arguing that questions asked by counsel for the U.S. Trustee at the § 341 meeting were inappropriate. Ex. 13 at 2-3. On October 2, 2018, Judge Susan Kelley held a hearing on Jackson's correspondence. Referring to the August 28 letter that Jackson prepared for Redzinski, Judge Kelley told Jackson, "You're not allowed to do that, ma'am. This is what I'm telling you." Ex. 36 at 3.

In Jackson's presence, Judge Kelley told Redzinski, "The debtor is supposed to give the petition preparer all the information and she just types. That's all she can do. She can't do motions. She can't do letters. She can't sign the debtor – you know, have the debtor authorize her to sign letters. Nothing. Fill out the petition. That's it. Anything more, and what that is considered is practicing law without a license and actually, that is a crime." *Id.* at 4.

Jackson asked Judge Kelley if she could remind debtors of when their filing fees are due, and Judge Kelley responded, "Nope. . . . None of that." *Id.* at 5. Judge Kelley also told Jackson, "You type the schedules, that's it. You can't help him with which chapter or knowing which chapter or helping him with filling out a statement to keep his car. No." Judge Kelley warned Jackson that it is difficult to comply with the rules for bankruptcy petition preparers: "I am also just giving you the free advice that this is not a good way to make extra money. I understand folks think it is. It isn't. There's too many rules. There's too many regulations. There's too many ways to step over the line." *Id.* at 23.

Jackson testified that despite Judge Kelley's admonishment, she continued to draft letters and other documents for debtors. She said that she consulted with one or more of her attorney friends who told her that writing letters, drafting other documents, and providing certain information to debtors is not giving legal advice. She said she trusted her friends' view of the law applicable to bankruptcy petition preparers over that of a bankruptcy judge.

### *Dionandrea Bolden*, Case No. 23-21459

Dionandrea Bolden filed a chapter 13 petition on April 3, 2023. Ex. 2 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed the appropriate forms with the petition. *Id.* at 8, 10-12. Jackson said that Bolden had been referred to her by Bolden's boyfriend, who also hired Jackson as a bankruptcy petition preparer.

10

Jackson prepared Bolden's application to pay the filing fee in installments. Ex. 2 at 13. She testified that she advised Bolden that she would have at least 30 days to pay the filing fee. She said this was based on her experience and "what the court said" in previous cases.

Jackson testified that she assisted Bolden with her chapter 13 plan. Ex. 2 at 14-27. According to Jackson, Bolden asked Jackson to "stretch it out far as it can go," meaning that she wanted her chapter 13 plan to last for as long as possible. Jackson determined that Bolden's chapter 13 plan payment needed to be $300 per month because Bolden's net monthly income on Schedule J was $300. Jackson said her understanding, which she relayed to Bolden and included on the chapter 13 plan, is that the chapter 13 plan payment needs to match the net monthly income on Schedule J.

In preparing Bolden's plan, Jackson listed a secured debt owed to CNAC in section 3.3, which is the section for payment of fully secured claims. Jackson chose the interest rate to be paid on the debt of 4.5% and indicated that the payments would be paid "pro rata." Jackson said she had a case before Bolden's in which the chapter 13 trustee said the interest rate needed to be 4.5%. Jackson said she also looked at plans available online to determine that the interest rate should be 4.5%. When asked what "pro rata" means, Jackson responded, "I haven't the slightest idea." She said an attorney had once told her that the monthly payment to secured creditors should be "pro rata." She did not name the attorney, and she agreed no attorney was supervising her work for Bolden. Jackson said she believes that every chapter 13 plan involving payment of a claim secured by a car should have the same terms.

Jackson prepared Bolden's Schedule C, the list of exemptions claimed by Bolden. Ex. 2 at 42-43. Jackson said she prepared Schedule C by copying all of Bolden's assets and their values from Schedule A/B. Jackson also determined which statute to use to exempt each asset.

Jackson also prepared Bolden's Schedule D, the list of creditors with secured claims, and Schedule E/F, the list of creditors with unsecured claims. Jackson testified that she generally prepares Schedules D and E/F by reviewing information on a debtor's credit report or on a debtor's online Credit Karma account. Jackson transfers the information from the credit report or the online account to the appropriate schedule. Jackson said that the debtor is often sitting with her while she fills in the information, but based on Jackson's testimony the Court finds that Jackson controls the process and makes the determine where a particular debt should be listed on the schedules.

On both Schedule D and Schedule E/F there is a place to indicate, for each debt, whether the debt is contingent, unliquidated, or disputed. For each debt on Bolden's schedules, the boxes next to Contingent, Unliquidated, and Disputed are all checked. Jackson testified that Bolden told her to check all the boxes, but Jackson also testified that Jackson says she was told by attorneys (she did not specify who) to always check all the boxes for each debt. She does not know whether there are any legal implications for checking any of the boxes. The Court finds that Jackson, not Bolden, determined that the boxes next to Contingent, Unliquidated, and Disputed should be checked for each debt.

Bolden's vehicle was repossessed on April 25, 2023. Jackson testified that when Bolden discovered her car missing that morning, Bolden called Jackson "in a panic." After Bolden determined that the car had been repossessed, Jackson offered to call CNAC with Bolden because Bolden was hesitant to call by herself. Benjamin Yurk, a representative of CNAC testified regarding two recorded telephone conversations related to Bolden's account, and transcripts of those calls were entered in evidence. Exs. 33 & 34. During the calls, Jackson repeatedly told the CNAC representatives that the repossession was a violation of the automatic stay. Ex. 33 at 2, 3, 4, 5; Ex. 34 at 6, 12, 15-17. Jackson stated, "[W]e most definitely will be

filing a motion for violation of the automatic [stay] because this don't make no sense" and "we're going to be filing a motion with the Bankruptcy Court . . . for a violation of the automatic stay." Ex. 33 at 4; Ex. 34 at 12.

When asked about these conversations, Jackson said that she had recounted to Bolden her prior personal experience with a stay violation, as well as the experience of her daughter and the experience of another debtor, Monique Owens. Jackson said she did not believe she was giving legal advice if she passed on her personal experience and that of her friends and relatives. When asked why she told the CNAC representative that "we" will be filing a motion related to the stay violation, Jackson said that Bolden "had already came and got the paperwork anyway because we already knew what we wanted to do." The Court finds that Jackson advised Bolden that CNAC had violated the automatic stay and to file a motion related to the perceived violation.

On April 26, 2023, a motion for sanctions against CNAC for violation of the automatic stay was filed in Bolden's case. Ex. 2 at 77-89. The motion, along with a notice of motion and certificate of service, is typewritten, and all three documents include Bolden's handwritten signature.

Bolden's motion is strikingly similar to a document filed in Jackson's daughter's bankruptcy case. Jackson's daughter filed bankruptcy with Jackson's assistance in the Southern District of Texas in 2022. Despite the pending bankruptcy, the daughter's landlord took steps to prosecute an eviction action. Jackson testified that she drafted a motion for sanctions against the landlord for her daughter (the "Texas motion"). Ex. 1005. Jackson did not disclose to the Texas bankruptcy court that she drafted the Texas motion, even though Jackson was listed as the bankruptcy petition preparer for her daughter's case. When asked why she did not disclose that she prepared the documents, Jackson responded that the court had not asked her about it.

Jackson testified that she provided Bolden with a hard copy of the Texas motion. Jackson says that Bolden then typed her own motion for sanctions following the sample that Jackson provided. Bolden's motion was filed in an envelope containing Jackson's handwriting. *See* Ex. 2 at 89. According to Jackson, Bolden retrieved the hard copy Texas motion from Jackson, typed her own motion, printed the motion she typed, then visited Jackson again to obtain an envelope before filing the motion herself.

The Court finds that Jackson's testimony regarding the drafting of the motion for sanctions filed in the Bolden case is not credible. The format of the Texas motion is nearly identical to the format of the document filed in Bolden's case. *Compare* Ex. 1005 at 1-5 *with* Ex. 2 at 79-84. The font and spacing of the captions are identical, and the same typographical error (DAMGES) appears in the title of both documents. In the Texas motion, the spacing and size of the font changes at the beginning of the Argument section. Ex. 1005 at 3. The motion filed in Bolden's case has the same font size and spacing change at the beginning of the section labeled "Conclusion." Ex. 2 at 82. The text of the Argument section in the Texas motion is nearly identical to the text in the Conclusion section of the Bolden motion, and the font switches from a sans serif font to a serif font in the same place in the middle of a paragraph in each motion. *Compare* Ex. 1005 at 3 *with* Ex. 2 at 82. In addition, Bolden's motion refers to a landlord, tenant, eviction, and rent – the same words used in and relevant to the Texas motion but irrelevant to Bolen's motion involving a vehicle. Ex. 2 at 80, 82.

Based on these similarities, the only conclusion is that the documents were created from the same electronic word processing file. Jackson was adamant that she did not draft the motion for Bolden and that she gave Bolden a hard copy, not an electronic copy, of the motion. Even if Bolden were following a hard copy of the Texas motion as a form, it is extremely unlikely that Bolden would have typed her own motion from scratch with the exact same font, font changes,

spacing and typographical errors as the Texas motion, particularly if she was so unskilled at word processing that she needed to retain a bankruptcy petition preparer to help her fill out the bankruptcy forms. The Court finds that Bolden's motion was necessarily drafted using an electronic copy of the Texas motion. The Court also finds that Jackson's response to questions about who drafted the motion and how it was drafted were defensive and evasive. Therefore, the Court finds that Jackson drafted the motion for Bolden.[3]

Bolden later filed a witness and exhibit list in connection with her motion for sanctions. Ex. 2 at 125. The format and font of the document matches the documents that Jackson has filed in this case and in other cases. As with the motion itself, it is unlikely that the format would match so closely if Bolden had typed her own document. In addition, Jackson's handwriting appears on the envelope used to deposit the document in the Court's drop box. *See* Ex. 2 at 131. And Jackson's demeanor was defensive when she was asked who drafted the document. The Court therefore finds that Jackson prepared the witness and exhibit list for Bolden.

On May 3, 2023, a letter was filed in Bolden's case requesting an extension of time to pay the filing fee. Ex. 2 at 90. Jackson would not admit that she drafted the letter, but the handwriting is similar to Jackson's handwriting. The handwriting also differs from two other letters filed in the case. On July 14, 2023, Bolden filed a letter to change her address. Ex. 2 at 123. She also filed a letter on August 23, 2023 to request that a hearing be rescheduled. *Id.* at 132. The handwriting on the July 14 and August 23 letters appears to be the same and differs

---

[3] For this reason, the Court also finds that Jackson's testimony regarding the reasons for her statements to the CNAC representatives is not credible. The Court finds that Jackson did not provide Bolden with a hard copy of the Texas motion, so Jackson's statement that Bolden "had already came and got the paperwork" before the calls with CNAC is not credible. The Court finds that Jackson told the CNAC representatives that "we" will be filing a motion because she intended to and did help Bolden draft a motion for sanctions.

from the handwriting on the May 3 letter. The Court finds that the May 3 letter is in Jackson's handwriting and that Jackson drafted and filed the letter on Bolden's behalf.

On May 24, 2023, amended schedules were filed in Bolden's case. Ex. 2 at 91-118. Jackson admitted that she prepared the amended schedules for Bolden. Jackson did not include her name or her identifying number with the amended schedules. Jackson testified that she was not aware until this adversary proceeding was filed that she needed to include her name and identifying number on every document that she prepared for filing.

### *Christopher Kemp*, Case No. 23-20007

Christopher Kemp testified at trial regarding Jackson's work on his chapter 7 case. Kemp filed a chapter 7 petition on January 4, 2023. Ex. 9 at 1. The petition does not disclose that Jackson was the bankruptcy petition preparer, but the petition is in Kemp's own handwriting and Jackson testified that she was not involved in the case until after Kemp had already prepared his petition.

Kemp testified that he contacted Jackson to help him fill out the bankruptcy paperwork. Jackson told him, "I can walk you through the process." Kemp's brother is an attorney, but Kemp decided to use Jackson to help him with his petition. He said that it was less expensive to hire Jackson than to hire an attorney.

Kemp filled out some of the schedules and statements himself, although Jackson advised him how to fill out the paperwork. For example, Kemp "walked through" Schedule D and Schedule E/F with Jackson. For each creditor included on Schedules D and E/F, the boxes labeled Contingent, Unliquidated, and Disputed are all checked. *See* Ex. 9 at 20-26. Kemp testified that Jackson advised him to check all the boxes. He said that he did not know what any of them meant. He guessed that Disputed means that the debt had been disputed through a credit reporting agency. He said that he had submitted such disputes for some of his creditors, but that

he did have some debts he did not dispute, such as a debt he owed to U.S. Bank. He did not know why Jackson would advise him to indicate that debt was disputed.

Jackson prepared Schedule I and Schedule J for Kemp, which were filed on January 18, 2023. Ex. 9 at 27-31. Jackson did not file Official Form 119 before or with those schedules. *See id.* at 49.

Jackson also helped Kemp complete Official Form 122A-1, Chapter 7 Statement of Your Current Monthly Income. *See* Ex. 9 at 43-45. When asked about Line 13 – the median family income for his state and size of household – Kemp testified that Jackson filled in the number. He did not look it up and would not have known what to put on that line without Jackson's assistance.

On January 18, 2023, a letter was submitted in Kemp's bankruptcy case requesting additional time to file the remaining bankruptcy schedules. Ex. 9 at 47. The letter was submitted in an envelope bearing Jackson's handwriting. *Id.* at 48. Kemp said he knew about the deadline to submit his schedules and other required documents, but that he was not familiar with the procedure to obtain an extension. He did not recall if he or Jackson prepared the letter, but he agreed there was no indication that he prepared it because "my autograph isn't on it." The font and format of the letter are identical to other typewritten letters that Jackson has prepared. The Court therefore finds that Jackson drafted and filed the letter for Kemp. Jackson did not sign her name or print her name, address, or identifying number on the letter.

Jackson helped Kemp prepare Schedule C. Ex. 9 at 63-64. Kemp claimed exemptions under federal law, and the law for each exemption is a subsection of 11 U.S.C. § 522(d). Kemp testified that Jackson selected the federal exemptions for him, and he did not know the effect of selecting federal exemptions or which exemptions to claim for each asset. The assets listed on Schedule C match exactly the assets listed on Schedule A/B, and the amount of the claimed

exemption matches the value of the assets, which is consistent with Jackson's practice. The Court finds that Jackson provided Kemp with the information to be included on Schedule C, including selecting the statute to use for each exemption.

Jackson prepared documents for Kemp that were filed on January 18, 2023, but Kemp did not sign Official Form 119 until January 23, 2023, and the form was not filed until January 25, 2023. Ex. 9 at 75-76.

Kemp's case was ultimately dismissed for failure to file all required schedules. Jackson emailed Douglas Mann, the chapter 7 trustee, to request that the case be reinstated. Ex. 29 at 8. When asked why she, rather than Kemp, emailed Mann, Jackson responded that "everyone doesn't have legal tact." The Court finds this explanation to be not credible. Based on his testimony and demeanor at trial, the Court finds that Kemp is educated and able to articulate a question to Mann in an email. It is more likely that Jackson advised Kemp, or determined on her own, that she would request more information on his behalf.

### *Ayeshia Riley*, Case No. 24-21122

Ayeshia Riley testified at trial regarding Jackson's work for her in a recent chapter 13 case. Riley filed a chapter 13 petition on March 8, 2024. Ex. 5 at 1. Jackson helped Riley file a chapter 7 petition several years prior, and Riley contacted her again when she had more financial difficulties. The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition. *Id.* at 9-11.

At her § 341 meeting, Riley testified that Jackson told her she could not file a chapter 7 because she had too recently received a chapter 7 discharge. When asked "Who told you, you couldn't do a seven?" Riley responded, "Ms. Jackson." Ex. 31 at 11. Riley also testified that Jackson told her a chapter 13 would help her. *Id.* at 12. At trial, however, Riley testified that she went to the library with her sister and discovered through online research that she would not be

eligible for a chapter 7 discharge. The Court finds that Riley's testimony at trial was not credible based on her demeanor at trial and the differences between her testimony at the § 341 meeting and at trial. The Court finds that Jackson provided advice to Riley about whether to file a chapter 7 or chapter 13 bankruptcy.

Jackson prepared Schedule D and Schedule E/F for Riley. Ex. 5 at 12-17. For each debt, the boxes next to Contingent, Unliquidated, and Disputed are all checked, which is consistent with Jackson's practice. The Court finds that Jackson chose to check each of those boxes without direction from Riley.

Riley filed a chapter 13 plan with the petition. Ex. 5 at 26-39. The plan form is completed in Riley's handwriting. Riley submitted a 12-month plan even though the minimum required length for a chapter 13 plan is 36 months. At the § 341 meeting, Riley testified that Jackson assisted with the terms for her chapter 13 plan. She had the following exchange with counsel for the U.S. Trustee:

> Q. Did Ms. Jackson advise you, or give you -- did she discuss the Chapter 13 plan with you?
> A. Yes. That's when we came up with the payments that what I would pay every month.
> Q. Okay, so she helped you figure out how to pay, or how much to pay?
> A. Yes.
> Q. And what did she tell you?
> A. After we calculated everything and she said we should -- I should do a 12-month plan, and just -- and pay $200 monthly.
> Q. And do you know why she advised you to do a 12-month plan?
> A. No.

Ex. 31 at 20. At trial, Riley testified that she asked a librarian how long a chapter 13 plan needed to be, that she consulted online resources to determine what terms to include in her plan, and that she, not Jackson, determined that she would submit a 12-month plan. The Court finds that Riley's testimony at trial was not credible based on her demeanor at trial and the differences

between her testimony at the § 341 meeting and at trial. The Court finds that Jackson provided advice to Riley regarding the length of her chapter 13 plan.

Riley's Schedule C is in her handwriting, not Jackson's, but as explained above Jackson stopped preparing Schedule Cs for her clients after the U.S. Trustee filed this adversary proceeding. The law for each exemption is a subsection of 11 U.S.C. § 522(d), which is consistent with the Schedule Cs that Jackson prepared before this adversary proceeding was filed. The assets listed on Schedule C match exactly the assets listed on Schedule A/B, and the amount of the claimed exemption matches the value of the assets, which is consistent with Jackson's practice. When asked at the § 341 meeting where she obtained the statutes for the exemptions at the § 341 meeting, Riley said "Off the other paperwork." She said, "I just looked at it and just copied it with my own-- ." Ex. 31 at 15-16. Riley denied that Jackson provided the paperwork that she copied. At trial, Riley similarly testified that Jackson did not assist with Schedule C. She said that she copied someone else's chapter 13 forms that she found online. The Court finds that Riley's testimony at trial was not credible based on her demeanor at trial and the similarities between Riley's Schedule C and the Schedule Cs that Jackson prepared for other clients. The Court finds that Jackson provided advice to Riley about the information to be included on Schedule C, including the statute to use for each exemption and the amount of each exemption.

At the § 341 meeting, Riley testified that she relied on Jackson's advice for whether she had to list a laptop computer on her schedules. When asked why the computer was not disclosed on Schedule A/B, Riley responded, "She didn't tell – well she didn't say I have to necessarily put a laptop. She just said electronics." *Id.* at 18. Riley did not provide testimony at trial on this point. The Court finds that Jackson provided advice to Riley regarding the information to be included on Schedule A/B.

*Darthaniel Holmes*, Case No. 23-21169

Darthaniel Holmes filed a chapter 7 petition on March 17, 2023. Ex. 3 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition. *Id.* at 9-11.

Jackson prepared Schedule C for Holmes. Ex. 3 at 27-28. Holmes claimed exemptions under federal law, and the law for each exemption is a subsection of 11 U.S.C. § 522(d). The assets listed on Schedule C match exactly the assets listed on Schedule A/B, and the amount of the claimed exemption matches the value of the assets, which is consistent with Jackson's practice. The Court finds that Jackson chose which assets to include on Schedule C, the amount of the claimed exemption, and the applicable law for each exemption without direction from Holmes.

Jackson prepared Schedule D and Schedule E/F for Holmes. Ex. 3 at 29-36. For each debt, the boxes next to Contingent, Unliquidated, and Disputed are all checked, consistent with Jackson's practice. The Court finds that Jackson chose to check each of those boxes without direction from Holmes.

Jackson prepared the Form 122A-2 Chapter 7 Means Test Calculation for Holmes. Ex. 3 at 64-72. Jackson testified that she checked the box at the top of the first page of the Means Test Calculation for "There is a presumption of abuse" without direction from Holmes and based on information she obtained from the Department of Justice website. Jackson said that she did not know what that meant or the implications of a presumption of abuse. Jackson did not sign her name or print her name, address, and identifying number on the document, nor did she submit an amended Official Form 119 with the Means Test Calculation. Jackson said her failure to disclose that she prepared the document was an "oversight." She testified to her belief that Official Form 119 can be amended at any time.

*Johnaquian Williams*, Case No. 23-21171

Johnaquian Williams filed a chapter 13 petition on March 17, 2023. Ex. 4 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer and Jackson filed an Official Form 119 with the petition. *Id.* at 9-11.

Jackson prepared Schedule C for Williams. Ex. 4 at 23-24. Williams claimed exemptions under federal law, and the law for each exemption is a subsection of 11 U.S.C. § 522(d). The assets listed on Schedule C match exactly the assets listed on Schedule A/B, and the amount of the claimed exemption matches the value of the assets, which is consistent with Jackson's practice. The Court finds that Jackson chose which assets to include on Schedule C, the amount of the claimed exemption, and the applicable law for each exemption without direction from Williams.

Jackson prepared Schedule D and Schedule E/F for Williams. Ex. 3 at 25-32. For each debt, the boxes next to Contingent, Unliquidated, and Disputed are all checked, which is consistent with Jackson's practice. The Court finds that Jackson chose to check each of those boxes without direction from Williams.

A chapter 13 plan was filed in Williams's case with the petition. Ex. 4 at 36-49. Jackson disclosed on Official Form 119 that she prepared the plan, and the document includes her handwriting. Section 3.3 of the plan provides for payment of a secured debt owed to Credit Acceptance. The stated interest rate is 4.5% and the monthly payment is listed as "pro rata." *Id.* at 41. These are the same terms that appeared in the Bolden plan that Jackson admitted to drafting. Because Jackson testified to her belief that all vehicle claims paid through a chapter 13 plan should be paid on the same terms, the Court finds that Jackson advised Williams to include these terms in his chapter 13 plan.

A typewritten letter was filed on March 31, 2023 requesting an extension of time to file the remaining schedules. Ex. 4 at 50. The typed letter includes Johnaquian Williams's name, but it is not signed by Williams or anyone else. The letter has the same font and format of other letters written by Jackson. The letter was filed in an envelope bearing Jackson's handwriting. Ex. 4 at 51. Jackson insisted at trial that she did not draft the letter. She said that Williams's girlfriend drafted the letter, that Williams then made a special trip to Jackson's house to obtain an envelope to use to deposit the letter in the Court's after-hours drop box, and that Jackson not only provided the envelope but took the time to write on the outside of the envelope. The Court finds this story to be not credible and finds that Jackson herself drafted and submitted the letter for Williams.

On June 30, 2023, Williams filed an amended chapter 13 plan. Ex. 4 at 80-88. The last page of the plan includes Jackson's handwriting, as does the certificate of service filed with the plan. *Id.* at 83, 84. A Form 106, Declaration About an Individual Debtor's Schedules was filed with the amended plan that disclosed that Jackson helped Williams fill out his bankruptcy forms, but the form did not disclose that Jackson helped Williams prepare the amended plan. *Id.* at 87. Jackson did not sign the amended plan or print her name, address, or identifying number on the amended plan, nor did she file an Official Form 119 disclosing that she prepared the amended plan.

### *Joe Langford*, Case No. 24-20865

Joe Langford filed a chapter 7 petition on February 26, 2024. Ex. 6 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer, but Jackson did not file an Official Form 119 with the petition. *Id.* at 8, 13. Langford did not sign Official Form 119 until March 4, 2024, and the form was filed on March 12, 2024. *Id.* at 14-16.

Jackson prepared Schedule E/F for Langford. Ex. 6 at 49-56. For each debt, the boxes next to Contingent, Unliquidated, and Disputed are all checked, which is consistent with Jackson's practice. The Court finds that Jackson chose to check each of those boxes without direction from Langford.

Langford's Schedule C is in his handwriting, not Jackson's. Ex. 6 at 47-48. Langford claimed exemptions under federal law, and the law for each exemption is a subsection of 11 U.S.C. § 522(d), which is consistent with the Schedule Cs that Jackson prepared before this adversary proceeding was filed. The assets listed on Schedule C match exactly the assets listed on Schedule A/B, and the amount of the claimed exemption matches the value of the assets, which is consistent with Jackson's practice. As noted above, Jackson stopped preparing certain documents for her clients after this adversary proceeding was filed, which is probably the reason that Langford physically prepared the document himself. However, because the information on Schedule C is consistent with the Schedule C documents prepared by Jackson before this adversary proceeding was filed, the Court finds that Jackson provided Langford with the information to be included on Schedule C, including selecting the statute and amount for each exemption.

### *Ryan Crenshaw*, Case No. 24-21418

Ryan Crenshaw filed a chapter 7 petition on March 22, 2024. Ex. 7 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition. *Id.* at 9-11.

Jackson prepared Schedule D and Schedule E/F for Crenshaw. Ex. 7 at 21-40. For each debt, the boxes next to Contingent, Unliquidated, and Disputed are all checked, which is consistent with Jackson's practice. The Court finds that Jackson chose to check each of those boxes without direction from Crenshaw.

Crenshaw's Schedule C is in his handwriting, not Jackson's. Ex. 7 at 68-69. Crenshaw claimed exemptions under federal law, and the law for each exemption is a subsection of 11 U.S.C. § 522(d), which is consistent with the Schedule Cs that Jackson prepared before this adversary proceeding was filed. The assets listed on Schedule C match exactly the assets listed on Schedule A/B, and the amount of the claimed exemption matches the value of the assets. As noted above, Jackson stopped preparing certain documents for her clients after this adversary proceeding was filed, which is probably the reason that Crenshaw physically prepared the document himself. However, because the information on Schedule C is consistent with the Schedule C documents prepared by Jackson before this adversary proceeding was filed, the Court finds that Jackson provided Crenshaw with the information to be included on Schedule C, including selecting the statute and amount for each exemption.

### *Jareika Sanders*, Case No. 24-20737

Jareika Sanders filed a chapter 7 petition on February 16, 2024. Ex. 11 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition. *Id.* at 9-11.

Jackson prepared Schedule D and Schedule E/F for Sanders. Ex. 11 at 22-30. For each debt, the boxes next to Contingent, Unliquidated, and Disputed are all checked, which is consistent with Jackson's practice. The Court finds that Jackson chose to check each of those boxes without direction from Sanders.

Sanders' Schedule C is in her handwriting, not Jackson's. Ex. 11 at 38-39. Sanders claimed exemptions under federal law, and the law for each exemption is a subsection of 11 U.S.C. § 522(d). The assets listed on Schedule C match exactly the assets listed on Schedule A/B, and the amount of the claimed exemption matches the value of the assets, which is consistent with Jackson's practice. As noted above, Jackson stopped preparing certain

documents for her clients after this adversary proceeding was filed, which is probably the reason that Sanders physically prepared the document herself. However, because the information on Schedule C is consistent with the Schedule C documents prepared by Jackson before this adversary proceeding was filed, the Court finds that Jackson provided Sanders with the information to be included on Schedule C, including selecting the statute and amount for each exemption.

On April 26, 2024, Sanders filed a letter regarding the U.S. Trustee's Rule 2004 request for production of documents. Ex. 11 at 66-68. In the letter, Sanders complains about questions asked by counsel for the U.S. Trustee during her § 341 meeting, including a delay in filing her schedules. Sanders wrote that counsel for the U.S. Trustee "stated to me that my schedules were late, however they were filed within 45 days." *Id.* at 66. When asked about this letter at trial, Jackson admitted that she told Sanders that the deadline to file any missing schedules is 45 days after the petition date.

### *Kendra Reddic*, Case No. 22-24033

Kendra Reddic filed a chapter 7 petition on September 12, 2022. Ex. 17 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition. *Id.* at 9-11.

On September 26, 2022, Jackson filed a letter on behalf of Reddic requesting an extension of time to file her schedules. Ex. 17 at 16. When asked about the letter at trial, Jackson testified that she had made a mistake in the wording of the letter. She said she had meant to ask for an extension of time not on behalf of Reddic but on behalf of herself so that the court did not think the schedules were late because Jackson had been dilatory. The Court finds that this explanation is plausible, but it does not explain why Jackson believed that a bankruptcy petition preparer could or should seek an extension to file documents on behalf of a debtor. The

Court finds that this letter is evidence that Jackson believed she had more responsibilities as a bankruptcy petition preparer than simply preparing forms with information provided by debtors.

### *Al Goins*, Case No. 22-23830

Al Goins filed a chapter 7 petition on August 29, 2022.  Ex. 18 at 1.  The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition.  *Id.* at 9-11.  Goins received a chapter 7 discharge and his case was closed in November 2022.

On October 21, 2023, Goins filed a letter requesting to reopen his case to add a creditor that was omitted from his original schedules.  Ex. 18 at 13.  The letter was filed in an envelope bearing Jackson's handwriting.  Ex. 18 at 21.  The letter is typewritten and appears to be signed by Goins.  Jackson denied drafting the letter, but the letter is in the same font and format as letters that Jackson has drafted.  In addition, if Goins drafted the letter himself, it is unclear why he would obtain an envelope from Jackson to file the letter, or why he would consult Jackson about the letter at all.  The Court finds that Jackson's testimony is not credible and that she drafted the letter for Goins.  The Court further finds that Jackson did not sign her name or print her name, address, or identifying number on the letter.

### *Corey Williams*, Case No. 22-20657

Corey Williams filed a chapter 7 petition on February 18, 2022.  Ex. 19 at 1.  The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition.  *Id.* at 9-11.

A handwritten letter was filed on April 25, 2022 requesting an extension of time to pay the filing fee.  Ex. 19 at 33.  Williams's name is hand printed on the document, but it is not signed by Williams and the entire document appears to bear Jackson's handwriting.  Another handwritten letter was filed on May 24, 2022 requesting another extension of time to pay the

filing fee. Ex. 19 at 34. Williams's name is hand printed on the document, but it is not signed by Williams and the entire document appears to bear Jackson's handwriting.

At trial, Jackson would not admit that the letters were in her handwriting or that she drafted them. Because Jackson was the bankruptcy petition preparer for Williams's case and because the letters appear to be in Jackson's handwriting and follow the format of other letters she has written, the Court finds that Jackson wrote the letters for Williams. The Court further finds that Jackson did not sign her name or print her name, address, or identifying number on the letters.

### *Ralfphel Cologn-Turner*, Case No. 21-26231

Ralfphel Cologn-Turner filed a chapter 7 petition on December 8, 2021. Ex. 20 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition. *Id.* at 9-11.

Jackson prepared Schedule C for Cologn-Turner. Ex. 20 at 22-23. Cologn-Turner claimed exemptions under federal law, and the law for each exemption is a subsection of 11 U.S.C. § 522(d). The assets listed on Schedule C match exactly the assets listed on Schedule A/B, and the amount of the claimed exemption matches the value of the assets, which is consistent with Jackson's practice. The Court finds that Jackson chose which assets to include on Schedule C, the amount of the claimed exemption, and the applicable law for each exemption.

A handwritten letter was filed on January 28, 2022 objecting to the trustee's motion to dismiss. Ex. 20 at 32. Cologn-Turner's name is hand printed on the document, but it is not signed by Cologn-Turner and the entire document appears to be in Jackson's handwriting. It also includes a CC to the chapter 7 trustee. Jackson testified at trial that she was not sure the letter was in her handwriting. Because Jackson was the bankruptcy petition preparer for Cologn-Turner's case and because the letter appears to be in Jackson's handwriting and follows the

format of other letters she has written, the Court finds that Jackson wrote the letter for Cologn-Turner. The Court further finds that Jackson did not sign her name or print her name, address, or identifying number on the letter.

### *Kristen Walton*, Case No. 21-25760

Kristen Walton filed a chapter 7 petition on November 1, 2021. Ex. 21 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer. *Id.* at 8.

A typewritten letter was filed on December 29, 2021 objecting to the trustee's motion to dismiss. Ex. 21 at 11. The letter includes Kristen Walton's typed name, but it is not signed by Walton or anyone else. The letter has the same font and format of other letters written by Jackson, it begins with "My name is," and it includes a CC to the chapter 7 trustee. At the top of the letter, the case number is handwritten in Jackson's handwriting.

At trial, Jackson insisted she did not write the letter, though she agreed she wrote the case number on the document. If Jackson's version of events is true, this pro se debtor drafted and printed the letter herself, did not sign it, and made a special trip to meet up with Jackson to ask her to review the printed version of the letter before filing. The Court finds Jackson's testimony on this point to be not credible because it makes no sense why the debtor would consult with Jackson regarding the letter if Jackson did not prepare the letter. The Court finds that Jackson herself wrote the letter and added the case number after printing the document. The Court further finds that Jackson did not sign her name or print her name, address, or identifying number on the letter.

### *Aundrea Hill*, Case No. 21-23388

Aundrea Hill filed a chapter 7 petition on June 11, 2021. Ex. 22 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition. *Id.* at 9-11.

29

Jackson prepared Schedule C for Hill. Ex. 22 at 22-23. Hill claimed exemptions under federal law, and the law for each exemption is a subsection of 11 U.S.C. § 522(d). The assets listed on Schedule C match exactly the assets listed on Schedule A/B, and the amount of the claimed exemption matches the value of the assets, which is consistent with Jackson's practice. The Court finds that Jackson chose which assets to include on Schedule C, the amount of the claimed exemption, and the applicable law for each exemption.

A handwritten letter was filed on August 10, 2021 objecting to the trustee's motion to dismiss. Ex. 22 at 35. Hill's name is hand printed on the document, but it is not signed by Hill and the entire document appears to bear Jackson's handwriting. It also includes a CC to the chapter 7 trustee. At trial Jackson would not agree that her handwriting is on the letter. Because Jackson was the bankruptcy petition preparer for Hill's case and because the letter appears to be in Jackson's handwriting and follows the format of other letters she has written, the Court finds that Jackson wrote the letter for Hill. The Court further finds that Jackson did not sign her name or print her name, address, or identifying number on the letter.

A typewritten letter was filed on September 3, 2021 objecting to a motion for relief from stay filed by Brooklane Apartments. Ex. 22 at 36-37. The letter includes Aundrea Hill's typewritten name, but it is not signed by Hill or anyone else. The letter has the same font and format of other letters written by Jackson, and incudes the phrase "If this court would take judicial notice," which is a phrase that appears frequently in Jackson's writing. The letter also includes a CC to counsel for Brooklane Apartments. At trial Jackson said that she couldn't recall if she drafted the letter. The Court finds that Jackson drafted the letter. Jackson was the bankruptcy petition preparer for Hill's case, the letter has the same font and format as other typewritten letters prepared by Jackson, and the letter includes a phrase commonly used by

Jackson but very uncommonly used by other pro se debtors. The Court further finds that Jackson did not sign her name or print her name, address, or identifying number on the letter.

### *Dominique Robinson*, Case No. 21-22602

Dominique Robinson filed a chapter 7 petition on May 4, 2021. Ex. 23 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition. *Id.* at 9-11.

A handwritten letter was filed on July 15, 2021 requesting an extension of time to pay the filing fee. Ex. 23 at 13-14. The letter opens with "My name is Dominique Robinson," but it is not signed by Robinson, the entire document appears to bear Jackson's handwriting, and it was filed in an envelope that bears Jackson's handwriting.

At trial, Jackson would not agree that the letter is in her handwriting, although at one point she agreed the handwriting on the outer envelope was "probably" her handwriting. Because Jackson was the bankruptcy petition preparer for Robinson's case and because the letter appears to be in Jackson's handwriting and follows the format of other letters she has written, the Court finds that Jackson wrote the letter for Robinson. The Court further finds that Jackson did not sign her name or print her name, address, or identifying number on the letter.

### *Devonaire Roundtree*, Case No. 21-22453

Devonaire Roundtree filed a chapter 7 petition on April 28, 2021. Ex. 24 at 1. The petition disclosed that Jackson was the bankruptcy petition preparer. *Id.* at 8.

Jackson prepared Schedule E/F for Roundtree. Ex. 24 at 9-13. For each debt, the boxes next to Contingent, Unliquidated, and Disputed are all checked, which is consistent with Jackson's practice. The Court finds that Jackson chose to check each of those boxes without direction from Roundtree.

31

A handwritten letter was filed on June 29, 2021 requesting an extension of time to pay the filing fee. Ex. 24 at 16. Roundtree's name is hand printed on the document, but it is not signed by Roundtree and the entire document appears to bear Jackson's handwriting.

At trial, Jackson would not agree that the letter is in her handwriting. Because Jackson was the bankruptcy petition preparer for Roundtree's case and because the letter appears to be in Jackson's handwriting and follows the format of other letters she has written, the Court finds that Jackson wrote the letter for Roundtree. The Court further finds that Jackson did not sign her name or print her name, address, or identifying number on the letter.

### *Monique Owens*, Case No. 19-20142

Monique Owens filed a chapter 7 petition on January 19, 2019. *See* Case No. 19-20142, ECF No. 1. The petition disclosed that Jackson was the bankruptcy petition preparer, and Jackson filed an Official Form 119 with the petition. *Id.*

On March 14, 2019, Owens filed an adversary proceeding against Nissan Motor Acceptance Corporation alleging that the creditor violated the automatic stay. Ex. 40 at 1-6. Jackson admitted at trial that she prepared the Adversary Proceeding Cover sheet. *Id.* at 1-2. She also admitted that she did not sign that document or print her name, address, or identifying number on the Adversary Proceeding Cover Sheet. Jackson stated her belief that she did not need to disclose that she prepared the document because the form does not have a place for such a disclosure.

Jackson would not admit that she drafted the complaint (Ex. 40 at 3-6) and insisted that Owens drafted the complaint herself. Jackson did admit that she told Owens that she could remedy a violation of the automatic stay by filing a motion or an adversary proceeding. The Court finds that Jackson's testimony that she did not draft the complaint is not credible. The document has the same font and format as other documents drafted by Jackson, and Jackson

prepared the Adversary Proceeding Cover Sheet. It makes no sense that Owens would be able to draft a full complaint on her own but not the cover sheet. The Court finds that Jackson drafted the complaint for Owens. The Court further finds that Jackson did not sign her name or print her name, address, or identifying number on the complaint.

## CONCLUSIONS OF LAW

Section 110 of the Bankruptcy Code governs bankruptcy petition preparers. A bankruptcy petition preparer is a "person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). A "document for filing" is "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under [title 11]." 11 U.S.C. § 110(a)(2).

The statute sets forth a bankruptcy petition preparer's duties, and it prescribes the penalties and remedies for violations of those duties. The United States Trustee has standing to bring enforcement proceedings for violations of § 110. 11 U.S.C. § 110(h)(4), (i)(1), (j)(1), and (*l*)(3).

The provisions of § 110 are lengthy, but they are clear. One court succinctly summarized the role of a bankruptcy petition preparer: "**bankruptcy petition preparers cannot do anything other than typing, data input, or photocopying, *period*.**" *Wieland v. Assaf (In re Briones-Coroy)*, 481 B.R. 685, 694 (Bankr. D. Colo. 2012) (emphasis in original). "Congress' clear intent was that § 110 authorize bankruptcy petition preparers to provide only scrivener services, limited to clerical services such as copying and typing." *In re Gomez*, 259 B.R. 379, 385 (Bankr. D. Colo. 2001). "A petition preparer may not assist a debtor in determining what information should be included on such documents or offer any information or advice as to what the law is or how it applies to the debtor's circumstances." *Id.* at 386. "[H]owever well-intended, the

'bankruptcy petition preparer' that offers anything more than a typing, data entry, or photocopying service is in violation of 11 U.S.C. § 110." *Briones-Coroy*, 481 B.R. at 691.

The U.S. Trustee's amended complaint seeks remedies against Jackson for four categories of violations of § 110:

1.  Collection or receipt of court fees in violation of § 110(g);

2.  Failure to sign and print name and address in violation of § 110(b)(1);

3.  Failure to place identification number on documents in violation of § 110(c)(1); and

4.  Provision of legal advice in violation of § 110(e)(2).

*See* Amended Compl. at 21-24. The Court will address each category of alleged violation, followed by a discussion of the remedies sought by the U.S. Trustee.

### 1.      Receipt of Court Fees

Bankruptcy petition preparers may not "collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition." 11 U.S.C. § 110(g). Though the U.S. Trustee's complaint alleges that Jackson collected court fees from her clients and deposited them with the Court, there was no evidence on this issue at trial. The Court will therefore not consider whether Jackson violated § 110(g).

Jackson did testify several times that she has on occasion paid the filing fee for a debtor, but that act is different from collecting or receiving fees from a debtor. In Wisconsin, there are strict rules regarding when a lawyer may pay a filing fee on behalf of a client. *See* WI SCR 20:1.8(e). It would be odd if a bankruptcy petition preparer could pay a filing fee for a client under circumstances where a lawyer could not. However, the U.S. Trustee has not sought any relief with respect to Jackson's payment of filing fees for debtors, so the Court declines to address the issue.

## 2. Identification Requirements Under 11 U.S.C. § 110(b) and (c)

A bankruptcy petition preparer must sign each document they prepare for filing and include their printed name and address. 11 U.S.C. § 110(b)(1). A bankruptcy petition preparer must also include an identifying number on each document they prepare for filing. 11 U.S.C. § 110(c)(1). For an individual, that number is typically their social security number. 11 U.S.C. § 110(c)(2)(A).

In addition, a bankruptcy petition preparer must give written notice to the debtor that she "is not an attorney and may not practice law or give legal advice." 11 U.S.C. § 110(b)(2)(B)(i). The notice must be provided before the bankruptcy petition preparer accepts a fee from the debtor or prepares any documents for the debtor. 11 U.S.C. § 110(b)(2)(A). The notice must be given on an official form prescribed by the Judicial Conference of the United States – Official Form 119. That form also has a place for the bankruptcy petition preparer to sign and print her name, address, and identification number. When a completed Official Form 119 is submitted with documents prepared by the bankruptcy petition preparer, the form suffices to comply with the requirements of §§ 110(b) and (c) so long as the petition preparer discloses each document she prepared.

"The disclosure and identification provisions of §§ 110(b) and (c) are clear and unambiguous." *Turner v. Burnworth (In re Carrier)*, 363 B.R. 247, 255 (Bankr. M.D. Fla. 2006). Despite the clear and unambiguous requirements of §§ 110(b) and (c), Jackson failed to include her signature, name, address, and identifying number on documents she prepared for several debtors. These documents include:

1. Motion for sanctions filed in the Dionandrea Bolden case, Ex. 2 at 77-89;

2. Witness and exhibit list filed in the Dionandrea Bolden case, Ex. 2 at 125;

3.      Letter filed on May 3, 2023 in the Dionandrea Bolden case, Ex. 2 at 90;

4.      Letter filed on January 18, 2023 in the Christopher Kemp case, Ex. 9 at 47;

5.      Form 122A-2 Chapter 7 Means Test Calculation filed in the Darthaniel Holmes case, Ex. 3 at 64-72;

6.      Letter filed on March 31, 2023 in the Johnaquian Williams case, Ex. 4 at 50;

7.      Amended chapter 13 plan filed in the Johnaquian Williams case, Ex. 4 at 80-88;

8.      Letter filed on October 25, 2023 in the Al Goins case, Ex. 18 at 13;

9.      Letter filed on April 25, 2022 in the Corey Williams case, Ex. 19 at 33;

10.     Letter filed on May 24, 2022 in the Corey Williams case, Ex. 19 at 34;

11.     Letter filed on January 28, 2022 in the Cologn-Turner case, Ex. 20 at 32;

12.     Letter filed on December 29, 2021 in the Walton case, Ex. 21 at 11;

13.     Letter filed on August 10, 2021 in the Hill case, Ex. 22 at 35;

14.     Letter filed on September 3, 2021 in the Hill case, Ex. 22 at 36-37;

15.     Letter filed on July 15, 2021 in the Robinson case, Ex. 23 at 13-14;

16.     Letter filed on June 29, 2021 in the Roundtree case, Ex. 24 at 16;

17.     Adversary Proceeding Cover Sheet and Complaint filed on March 14, 2019 in the Owens case, Ex. 40 at 1-6.

The Court concludes that Jackson violated §§ 110(b) and (c) when she did not sign her name on these documents and did not print her name, address, and identifying number on these documents.

Jackson argues that for many documents she prepared there is no place for her to sign her name or print her name, address, or identifying number. She argues that without a place on the

form to include information for a bankruptcy petition preparer, she could not have known she needed to sign the documents and provide her name, address, and identifying number. This defense is without merit.

The statute does not exempt petition preparers from the requirements of § 110 simply because a form does not have a space for a petition preparer to sign. Official Form 119 is specifically designed to be filed with any document that is prepared by a bankruptcy petition preparer so that the preparer may comply with §§ 110(b) and (c). It event includes an option for "Other" among the list of documents prepared for a debtor, where the bankruptcy petition preparer could list additional documents. Jackson is well aware of the need to file Official Form 119 because she has filed the form in every case in which she disclosed that she was the bankruptcy petition preparer. Moreover, many of the documents that Jackson prepared without complying with the disclosure requirements are letters, not pre-printed forms. Jackson clearly could have added her name, address, identifying number and signature on the documents she handwrote or typed herself.

Jackson also failed to provide the information on Official Form 119 before preparing documents on behalf of at least two debtors. That form includes the required disclosures under 11 U.S.C. § 110(b)(2) and must be signed by a debtor before the bankruptcy petition preparer prepares any documents for filing or accepts any fees from or on behalf of a debtor. *See* 11 U.S.C. § 110(b)(2)(A), (B)(iii)(I).

In the Christopher Kemp case, Jackson prepared Schedule I, Schedule J, and Form 122A-1 Chapter 7 Statement of Your Current Monthly Income, which were filed on January 18, 2023. Ex. 9 at 27-31, 43-46. Kemp did not sign Official Form 119 until January 23, 2023, and the form was not filed until January 25, 2023. Ex. 9 at 75. Jackson therefore violated § 110(b)(2) because

she did not ensure that Kemp reviewed and signed Official Form 119 before she prepared documents on his behalf.

In the Joe Lanford case, Jackson prepared the Petition, which was filed on February 26, 2024. Ex. 6 at 1-8. Langford did not sign Official Form 119 until March 4, 2024, and it was not filed until March 12, 2024. Ex. 6 at 14. Jackson therefore violated § 110(b)(2) because she did not ensure that Langford reviewed and signed Official Form 119 before she prepared documents on his behalf.

The U.S. Trustee did not seek relief based on those violations of § 110(b)(2), so the Court will not consider those violations for the purpose of determining how many violations occurred and what fines, if any, should be imposed. However, the Court has considered those violations, which are readily apparent from the record, in considering whether injunctive relief is appropriate based on Jackson's violations of § 110.

### 3. Prohibition on Providing Legal Advice Under 11 U.S.C. § 110(e)(2)

Section 110 expressly prohibits bankruptcy petition preparers from offering legal advice. It states clearly and simply, "[a] bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice." 11 U.S.C. § 110(e)(2)(A). The statute includes the following list of prohibited legal advice:

> The legal advice referred to in subparagraph (A) includes advising the debtor –
> (i) whether –
>     (I) to file a petition under this title; or
>     (II) commencing a case under chapter 7, 11, 12, or 13 is appropriate;
> (ii) whether the debtor's debts will be discharged in a case under this title;
> (iii) whether the debtor will be able to retain the debtor's home, car, or other property after commencing a case under this title;
> (iv) concerning –
>     (I) the tax consequences of a case brought under this title; or
>     (II) the dischargeability of tax claims;
> (v) whether the debtor may or should promise to repay debts to a creditor or enter into a reaffirmation agreement with a creditor to reaffirm a debt;
> (vi) concerning how to characterize the nature of the debtor's interests in

property or the debtor's debts; or
(vii) concerning bankruptcy procedures and rights.

11 U.S.C. § 110(e)(2)(B).

This list is neither exclusive nor exhaustive. *United States Trustee v. McIntire (In re Sanchez)*, 446 B.R. 531, 538 (Bankr. D.N.M. 2011) ("This list of examples is not exhaustive, but merely illustrative of the types of conduct that, if offered by a bankruptcy petition preparer, constitutes impermissible legal advice."). "Virtually any exercise of discretion about what to include or not include in the bankruptcy documents, will touch upon a bankruptcy 'procedure' or 'right,'" and will therefore violate § 110(e)(2). *In re Hennerman*, 351 B.R. 143, 152 (Bankr. D. Colo. 2006).

Bankruptcy courts often look to state law to determine whether a bankruptcy petition preparer has engaged in the unauthorized practice of law. *See Adams v. Giordano (In re Clarke)*, 426 B.R. 443, 453 (Bankr. E.D.N.Y. 2009) ("Bankruptcy courts look to state law to determine whether a bankruptcy petition preparer has engaged in the unauthorized practice of law."); *In re Boettcher*, 262 B.R. 94, 96 (Bankr. N.D. Cal. 2001) ("[S]tate law is properly considered in determining whether the unauthorized practice of law has occurred in a bankruptcy court."). In Wisconsin, the practice of law is "the application of legal principles and judgment with regard to the circumstances or objectives of another entity or person(s) where there is a client relationship of trust or reliance and which require the knowledge, judgment, and skill of a person trained as a lawyer." WI SCR 23.01. The practice of law includes the "[s]election, drafting, or completion for another entity or person of legal documents or agreements which affect the legal rights of the other entity or person(s)." *Id.*

Wisconsin also has a statute prohibiting the authorized practice of law. *See* Wis. Stat. § 757.30(2) ("Every person who . . . renders any legal service for any other person . . . shall be deemed to be practicing law[.]"). A person found to be engaging in the unauthorized practice of

law can be fined up to $500 and/or imprisoned for up to one year. Wis. Stat. § 757.30(1). The primary purpose of Wisconsin's unauthorized practice of law statute is "to assure that the public is not put upon or damaged by inadequate or unethical representation." *Littleton v. Langlois*, 37 Wis. 2d 360, 364 (1967).

The Court concludes that Jackson provided legal advice to many debtors in violation of 11 U.S.C. § 110(e)(2) as described below.

### A. Selection of Exemption Statutes

When a debtor elects to exempt certain property to remove it from the reach of their creditors, they must fill out Schedule C. The form includes a place for the debtor to claim the amount of the exemption and to indicate the specific law that allows the exemption. Selection of the law allowing an exemption is a legal decision because it affects the legal rights of the debtor and their creditors in the property claimed to be exempt. A bankruptcy petition preparer may not select exemptions for a pro se debtor without any input from the debtor or a conscious decision by the debtor to select one particular law over another. *See Briones-Coroy*, 481 B.R. at 737 (a bankruptcy petition preparer is prohibited from "[c]hoosing exemptions for debtors"); *Sanchez*, 446 B.R. at 539 ("Here, each debtor signed the Schedules, which included Schedule C, without any understanding of what exemptions were claimed and without any conscious decision on their part to claim those exemptions. They relied on Defendant's choices of what exemptions should be claimed."); *In re Kaitangian*, 218 B.R. 102, 110 (Bankr. S.D. Cal. 1998) ("[A]dvising of available exemptions from which to choose, or actually choosing an exemption for the debtor with no explanation, requires the exercise of legal judgment beyond the capacity and knowledge of lay persons.").

In Wisconsin, debtors can choose to claim exemptions under either state law or federal law. The selection of an applicable exemption law has significant legal consequences. A

debtor's ability to keep her property in bankruptcy and prevent it from being liquidated by a chapter 7 trustee depends on the appropriate claiming of exemptions. Not every debtor should rely on federal exemptions, and not all property is exemptible.

Every Schedule C prepared by Jackson or with Jackson's assistance claimed exemptions under federal law. None claimed exemptions under state law. It is unlikely that in a sample of the number of pro se debtors discussed in this decision would all choose federal exemptions if Jackson had not advised them to do so. In addition, Jackson testified that she would copy a debtor's assets and the value of the assets directly from Schedule A/B onto Schedule C. This was not done at the direction of the debtors and neither she nor the debtors gave any regard to whether a particular asset was exemptible or whether the entire value of the asset could be exempted. As discussed above, the Court finds that Jackson selected the amount and the applicable law for the exemptions claimed by Dionandrea Bolden, Christopher Kemp, Ayeshia Riley, Darthaniel Holmes, Johnaquian Williams, Joe Langford, Ryan Crenshaw, Jareika Sanders, Ralfphel Cologn-Turner, and Aundrea Hill. The Court concludes that Jackson violated § 110(e)(2) with respect to these ten debtors when she filled out Schedule C to include every asset from Schedule A/B, listed the entire value of each asset as exempt, and selected the applicable exemption statutes.

### B. *Characterization of Debts*

Section 110(e)(2) specifically prohibits bankruptcy petition preparers from providing advice "concerning how to characterize the nature of . . . the debtor's debts." 11 U.S.C. § 110(e)(2)(B)(vi). This means that a bankruptcy petition preparer cannot determine whether a debt is secured or unsecured, priority or nonpriority. *See In re Monson*, 522 B.R. 340, 352 (Bankr. D. Utah 2014) (a bankruptcy petition preparer provided legal advice by "assigning the creditors into the categories provided by the schedules"). Nor can a bankruptcy petition preparer

41

determine whether a particular debt is contingent, unliquidated, or disputed. Such a determination has legal consequences for both the debtor and the creditor. *See, e.g.*, 11 U.S.C. § 109(e) (contingent and unliquidated debts are not counted in debt limit for chapter 13 cases); 11 U.S.C. § 702(a) (a creditor holding a disputed or unliquidated claim may not vote for a chapter 7 trustee).

Despite the clear prohibition on characterizing debts, Jackson did just that for her clients. As discussed above, the Court finds that Jackson determined that each and every debt on Schedules D and E/F should be characterized as contingent, unliquidated, and disputed for debtors Dionandrea Bolden, Christopher Kemp, Ayeshia Riley, Darthaniel Holmes, Johnaquian Williams, Joe Langford, Ryan Crenshaw, Jareika Sanders, and Devonaire Roundtree. Jackson received no input from the debtors regarding these characterizations. She said she so characterized the debts because "that's how she was taught." Jackson's belief that she should determine for these debtors whether their debts were contingent, unliquidated, and disputed is reckless and irresponsible, and it shows that Jackson does not have the legal and bankruptcy expertise she believes herself to have. The Court concludes that Jackson violated § 110(e)(2) when she checked the boxes for Contingent, Unliquidated, and Disputed for every debt on the schedules she prepared for these nine debtors.

Jackson's practice of preparing Schedule D and Schedule E/F by transferring information from a debtor's credit report or Credit Karma account also violates § 110(e)(2). In transferring the information, Jackson made a legal decision where to list each creditor on Schedule D and E/F and whether to characterize the debts as secured or unsecured and priority or non-priority. *See Monson*, 522 B.R. at 352 ("assigning the creditors into the categories provided by the schedules" violated § 110(e)(2)); *In re Rosario*, 493 B.R. 292, 336 (Bankr. D. Mass. 2013) (petition preparer may not use "credit reports or 'discussions' with the client[] to glean information used to prepare

the debtor's petition").  The evidence at trial did not establish that Jackson decided where to list the debts on Schedules D and E/F for any specific debtor; the only evidence was Jackson's testimony as to her general practices.  Therefore, the Court will not consider Jackson's violations in this regard for purposes of calculating the number of violations.  However, the Court has considered Jackson's testimony regarding her methods for preparing Schedules D and E/F for her clients in determining whether injunctive relief is appropriate.

### C.     Completion of Means Test Forms

Jackson assisted Christopher Kemp with preparation of the Form 122A-1 Chapter 7 Statement of Your Current Monthly Income by selecting the median income for his state and household size.  Ex. 9 at 43-45.  Jackson also assisted Darthaniel Holmes in completing the Form 122A-2 Chapter 7 Means Test Calculation, and she checked the box at the top of the form indicating that "[t]here is a presumption of abuse."  Ex. 3 at 64.

"Completing the means test and determining whether the presumption arises, does not arise, or is temporarily inapplicable constitutes legal advice because it involves legal determinations concerning bankruptcy procedures and rights."  *Monson*, 522 B.R. at 353.  The Court concludes that Jackson violated 11 U.S.C. § 110(e)(2) when she provided legal advice to Kemp and Holmes regarding the information that should be included on their means test forms.

### D.     Preparation of Chapter 13 Plans

"The preparation of [chapter 13] plans necessarily requires legal analysis and judgment." *Hennerman*, 351 B.R. at 151.  Determining which provisions to include in a chapter 13 plan necessarily constitutes legal advice.  *See Rosario*, 493 B.R. at 335 & n.41 (citing cases).  Setting the monthly payment amount, the payment terms for specific debts, and the length of a chapter 13 plan all involve consideration of many complex statutes and legal principles.

43

Jackson provided advice regarding the payment terms for secured debts in the plans proposed by Dionandrea Bolden and Johnaquian Williams. She also determined the monthly payment amount and length of the plan for Ayeshia Riley. The Court concludes that Jackson violated § 110(e)(2) when she provided such advice to these three debtors regarding their chapter 13 plans.

### E.    *Motions and Responses*

"[T]here is no question that drafting motions or responses for debtors to be filed with the court constitutes the unauthorized practice of law. Preparing motions or responses on a debtor's behalf requires the application of legal principles to a particular client's circumstances in order to secure or protect the clients' rights or benefits." *Rosario*, 493 B.R. at 337; *see also In re Bodrick*, No. 14-31516, 2016 WL 1555593, at *5 (Bankr. W.D.N.C. Apr. 14, 2016) ("[T]he preparation of a motion for another person is the work of an attorney[.]"). Even just encouraging a debtor to file a motion constitutes practicing law because it has legal consequences. *See In re Bernales*, 345 B.R. 206, 222 (Bankr. C.D. Cal. 2006) ("While it appears that neither CCSA nor Mr. Bohl actually drafted the motion itself, their mere encouragement of this is also the unauthorized practice of law, and has legal consequences.").

Jackson drafted the following motions (including letters construed as motions) and responses to motions for her clients:

1.    Letter filed on May 3, 2023 in the Dionandrea Bolden case requesting an extension of time to pay the filing fee, Ex. 2 at 90;

2.    Letter filed on January 18, 2023 in the Christopher Kemp case requesting an extension of time to file schedules, Ex. 9 at 47;

3.    Letter filed on March 31, 2023 in the Johnaquian Williams case requesting an extension of time to file schedules, Ex. 4 at 50;

4.    Letter filed on October 25, 2023 in the Al Goins case requesting that the case be reopened, Ex. 18 at 13;

5.      Letter filed on April 25, 2022 in the Corey Williams case requesting an extension of time to pay the filing fee, Ex. 19 at 33;

6.      Letter filed on May 24, 2022 in the Corey Williams case requesting an extension of time to pay the filing fee, Ex. 19 at 34;

7.      Letter filed on January 28, 2022 in the Ralfphel Cologn-Turner case objecting to the chapter 7 trustee's motion to dismiss, Ex. 20 at 32;

8.      Letter filed on December 29, 2021 in the Kristen Walton case objecting to the chapter 7 trustee's motion to dismiss, Ex. 21 at 11;

9.      Letter filed on August 10, 2021 in the Aundrea Hill case objecting to the chapter 7 trustee's motion to dismiss, Ex. 22 at 35;

10.     Letter filed on September 3, 2021 in the Aundrea Hill case objecting to a creditor's motion for relief from stay, Ex. 22 at 36-37;

11.     Letter filed on July 15, 2021 in the Dominique Robinson case requesting an extension of time to pay the filing fee, Ex. 23 at 13-14;

12.     Letter filed on June 29, 2021 in the Devonaire Roundtree case requesting an extension of time to pay the filing fee, Ex. 24 at 16;

Jackson engaged in the unauthorized practice of law when she drafted each of these documents, and that she therefore violated § 110(e)(2).  The motions affect the legal rights of the debtors, and Jackson was unqualified to draft either motions or responses to motions.  Jackson should not have even provided advice to these debtors about what actions they could take to extend deadlines, reopen a case, or object to motions, much less draft the documents herself.  Jackson's drafting of these documents for her clients went far beyond the role of a bankruptcy petition preparer and plainly constitutes legal advice.

## F.      *Advice and Document Drafting Related to Stay Violations*

Jackson's most egregious violations of § 110(e)(2) involve her advice regarding the automatic stay.  Jackson drafted an adversary proceeding cover sheet and an adversary complaint for Monique Owens alleging that a creditor violated the automatic stay.  Ex. 40 at 1-6.  Even

45

advising a debtor whether and how to file an adversary proceeding involves the provision of legal advice, and is far outside the realm of anything a bankruptcy petition preparer should be doing. By drafting the complaint and cover sheet herself, Jackson clearly engaged in the unauthorized practice of law.

Jackson also drafted a motion for sanctions and a witness and exhibit list for Dionandrea Bolden. Ex. 2 at 77-84, 125-26. Not only that, but she participated in two calls with a creditor and acted as an advocate for Bolden. Ex. 33, 34. Again, these activities are far outside what any bankruptcy petition preparer should be doing. The Court concludes that Jackson violated § 110(e)(2) when she drafted documents for Bolden and when she participated in calls with CNAC with Bolden.

Jackson argues that the advice she provided was based on her personal experience, and that she provided documents that were publicly available. Even if Jackson did simply provide forms to Owens or Bolden, that action would constitute legal advice. "[A] bankruptcy petition preparer who provides selected written materials to the debtor or directs the debtor to websites for assistance in making legal decisions is essentially giving the debtor legal advice and engaging in the practice of law." *Rosario*, 493 B.R. at 336; *see also Boettcher*, 262 B.R. at 95 (bankruptcy petition preparer "engaged in unauthorized practice of law by obtaining a form that she considered appropriate for [debtor's] motion and providing it to him"). This is because directing a debtor to specific materials is really a suggestion that a debtor take a specific course of action, and Wisconsin law specifically includes the selection of documents that affect legal rights among the prohibitions for non-lawyers. WI SCR 23.01(2). Jackson's story that she provided sample documents is thus no better and no less violative than drafting the documents herself.

### *G. Miscellaneous Legal Advice*

Finally, the Court concludes that Jackson provided legal advice in violation of § 110(e)(2) on several other matters.

Jackson determined that Ayeshia Riley could not file a chapter 7 bankruptcy and advised her to file a chapter 13 bankruptcy to address her financial problems. "The question of whether to file a petition pursuant to Chapter 7 or Chapter 13 of the Code, involves the analysis of a complex and highly sophisticated series of statutory and common law provisions." *In re Arthur*, 15 B.R. 541, 546 (Bankr. E.D. Pa. 1981). "To make this determination, one must not only be well-versed in the various exemption and dischargeability provisions of the Code, but must also be knowledgeable of the nature and effect of the rights asserted in a bankruptcy proceeding by either secured or unsecured creditors." *Id.* Jackson did not have this knowledge, and she should not have given any advice to prospective debtors about whether to file bankruptcy or what chapter to file under. The Court concludes that Jackson violated § 110(e)(2) when she advised Riley that she should file a chapter 13 bankruptcy.

Jackson also advised Riley what information should be included on Schedule A/B. Specifically, she told Riley that a laptop could be included with electronics and need not be separately listed as an asset. *See Rosario*, 493 B.R. at 334 (noting that completing Schedule A/B inherently requires legal determinations because "the debtor must determine whether she or he has any legal interests in personal property, the nature of any such interest, and the value of that property"). The Court concludes that Jackson violated § 110(e)(2) when she provided advice to Riley about the information that could or should be included on Schedule A/B.

Jackson advised Jareika Sanders that the deadline for Sanders to file the required bankruptcy schedules and statements was 45 days after the petition date. Determination of a deadline to file documents involves construing the applicable statutes and rules and constitutes

legal advice. Even telling a debtor how to count days under the applicable rules so the debtor can determine the date of the deadline is legal advice. *Bernales*, 345 B.R. at 222 (preparer engaged in unauthorized practice of law by telling a debtor how to determine a deadline that was set for 15 days later). This is because deadlines can have serious consequences in bankruptcy. If the preparer is wrong in their interpretation of the deadline or how to calculate the deadline, a debtor may be prejudiced "and without the same remedies he might have against an attorney." *Id*. The Court concludes that Jackson violated § 110(e)(2) when she told Sanders the deadline to file her schedules and statements.

Jackson sent an email to the chapter 7 trustee in Christopher Kemp's case asking why the case had been dismissed and requesting that the case be reinstated. Ex. 29 at 8. A bankruptcy petition preparer cannot advocate on behalf of a client with the chapter 7 trustee or any other party in interest. *See* WI SCR 23.01(4); *cf. In re Wolfe*, No. 09-1326, 2012 WL 734151, at *2 (Bankr. N.D. W. Va. Mar. 6, 2012) (precluding petition preparers from using the following terms in their advertisements: "advise, consult, advocate, guidance, counsel, or similar terms"). The Court concludes that Jackson violated § 110(e)(2) when she communicated with the chapter 7 trustee on Kemp's behalf.

### 4.	Remedies

In his Amended Complaint, the U.S. Trustee requests several remedies for Jackson's violations of § 110. He asks that the Court award statutory damages under § 110(i)(1), impose statutory fines under § 110(*l*)(3), and enter an injunction prohibiting Jackson from acting as a bankruptcy petition preparer under § 110(j).

### A.	*Statutory Damages*

If a court finds that a bankruptcy petition preparer violates § 110 or commits any act that the court finds to be fraudulent, unfair or deceptive,

the court shall order the bankruptcy petition preparer to pay to the debtor –

(A) the debtor's actual damages;
(B) the greater of –
    (i) $2,000; or
    (ii) twice the amount paid by the debtor to the bankruptcy petition
       preparer for the preparer's services; and
(C) reasonable attorneys' fees and costs in moving for damages under this
    subsection.

11 U.S.C. § 110(i)(1).

No debtor claimed to be harmed by Jackson's actions. Indeed, Jackson's debtor clients appear to have sided with her in this dispute. Ayeshia Riley changed her testimony at trial from her testimony in her § 341 meeting in a way that would have protected Jackson, Jareika Sanders wrote a letter complaining about the U.S. Trustee's questions regarding Jackson's services, and Dionandrea Bolden refused to appear for a Rule 2004 examination or at trial. Counsel for the U.S. Trustee stated that she had contacted other debtors who similarly refused to cooperate with the U.S. Trustee's inquiries.

During a hearing held on June 20, 2024, counsel for the U.S. Trustee withdrew the U.S. Trustee's request that the Court award statutory damages under § 110(i)(1). By using the phrase "shall," the statute suggests that such damages are required when a court finds that a bankruptcy petition preparer has violated § 110. However, because the U.S. Trustee has withdrawn his request that such damages be awarded, the Court will not order damages under this subsection or consider whether such damages are mandatory.

### B. Statutory Fine

Under § 110(*l*)(1), a bankruptcy court may fine a bankruptcy petition preparer who violates § 110, up to a maximum of $500 per violation. If the court imposes a fine, "[t]he court shall triple the amount of a fine . . . in any case in which the bankruptcy court finds that a bankruptcy petition preparer . .  prepared a document for filing in a manner that failed to disclose

the identity of the bankruptcy petition preparer." 11 U.S.C. § 110(*l*)(2)(D). A court has discretion to award less than the maximum fine. *See Monson*, 522 B.R. at 354.

The Court finds that Jackson committed over 50 separate violations of § 110. In his pretrial report, the U.S. Trustee requested the opportunity to submit a brief with his position on the appropriate amount of any fine to be imposed. At the June 20 hearing, counsel for the U.S. Trustee again requested that the U.S. Trustee have a further opportunity to consider the amount of the fine the U.S. Trustee will ask the Court to impose. The Court will therefore allow the parties to make further submissions regarding whether fines should be imposed and the amount of any such fines. The Court will enter a separate order setting the deadlines for those submissions.

### C. *Injunctive Relief*

The U.S. Trustee requests that the Court permanently enjoin Jackson from acting as a bankruptcy petition preparer in this district. Section 110 authorizes a bankruptcy court to enter an injunction if the court finds that:

> (i) a bankruptcy petition preparer has –
>> (I) engaged in conduct in violation of [§ 110] or of any provision of [title 11];
>> (II) misrepresented the preparer's experience or education as a bankruptcy petition preparer; or
>> (III) engaged in any other fraudulent, unfair, or deceptive conduct; and
>
> (ii) injunctive relief is appropriate to prevent the recurrence of such conduct, the court may enjoin the bankruptcy petition preparer from engaging in such conduct.

11 U.S.C. § 110(j)(2)(A). If the court finds that a bankruptcy petition preparer has continually engaged in the violative conduct and that "an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of [the Bankruptcy

Code], the court may enjoin the person from acting as a bankruptcy petition preparer." 11 U.S.C. § 110(j)(2)(B).

The Court concludes that Jackson repeatedly violated § 110, as described above. The Court also concludes that Jackson engaged in other fraudulent, unfair, or deceptive conduct. In particular, Jackson provided inappropriate legal advice to many debtors, and she represented to debtors that she had both personal and professional experience navigating the bankruptcy system and could provide advice based on that experience. "[U]nauthorized legal practice is made even more misleading when the petition preparer tells the client that he or she is not an attorney and cannot give legal advice, but then proceeds to do just that." *Rosario*, 493 B.R. at 338; *see also Carrier*, 363 B.R. at 258 (imposing permanent injunction because "[t]he Defendants have committed fraudulent, unfair and deceptive acts . . . by continually engaging in the unauthorized practice of law"); *Briones-Coroy*, 481 B.R. at 738 ("[T]he giving of legal advice by a petition preparer operates as a particularly unfair and deceptive practice.").

Jackson also told debtors that she had attorney friends to whom she could pose a legal question if any should arise during the case. The suggestion that Jackson could serve as a conduit for legal advice from attorneys who were not supervising her work is all the more unfair and deceptive. This gave debtors the illusion that they were receiving a level of service from Jackson that she just was not qualified to provide. Jackson is not a lawyer and cannot give legal advice, period. It does not matter whether the advice is based on her personal experience or on information from knowledgeable attorneys.

The Court therefore concludes that injunctive relief is appropriate to prevent the recurrence of Jackson's violative conduct. *See* 11 U.S.C. § 110(j)(1). The Court further concludes that an injunction against specific activities or an injunction for a period of time would not be sufficient to prevent the recurrence of Jackson's violative conduct. Therefore, the Court

concludes that it is appropriate to permanently enjoin Jackson from acting as a bankruptcy petition preparer in this district.

This is the first action that the U.S. Trustee or any other party has brought against Jackson alleging violations of § 110. It is uncommon for a court to permanently enjoin a bankruptcy petition preparer on the first action for violation of § 110. *See, e.g.*, *Briones-Coroy*, 481 B.R. at 741 (entering permanent injunction only after a "litany of fines, sanctions and injunction orders"); *In re Jay*, 446 B.R. 227, 255 (Bankr. E.D. Va. 2010) (collecting cases and noting that courts issuing permanent injunctions "have often found egregious conduct on the part of the bankruptcy petition preparer combined with violations of earlier court orders"). But the Court concludes that there are several aggravating circumstances in this case that render a permanent injunction appropriate.

First, Jackson has demonstrated an inability to comply with direction from judges in this district. In 2018, Judge Kelley clearly told Jackson "You type the schedules, that's it." Ex. 36 at 8. Despite this very clear direction from a bankruptcy judge experienced in construing and applying § 110, Jackson took it upon herself to obtain a second opinion from her attorney friends, and she decided to believe their advice over Judge Kelley's admonishment. Based on this history, the Court is not confident that Jackson can abide by a more narrowly tailored injunction. An injunction that prohibits Jackson from performing any work as a bankruptcy petition preparer in this district will be clear so that there is no confusion as to what Jackson is or is not allowed to do.

Second, Jackson seems unable to determine what is and is not legal advice or how to avoid the unauthorized practice of law. She applies legal "rules" she claims to have learned from attorneys, and she seems to believe that blind application of these rules is not legal advice. For example, Jackson testified to her belief that all debtors have 45 days to file their schedules before

there is any adverse consequence. This is not so. The Bankruptcy Rules require that all statements and schedules be filed within 14 days after the petition date in a voluntary case. Fed. R. Bankr. P. 1007(c). And in a chapter 13 case, the plan must also be filed within 14 days. Fed. R. Bankr. P. 3015(b). Jackson testified to her belief that all debts secured by vehicles could be treated with the same terms in every chapter 13 plan, regardless of the circumstances. Again, not so. The amount of some debts may be modified, *see* 11 U.S.C. § 1322(b)(2), and the amount of others may not, *see* 11 U.S.C. § 1325(a)(9) (hanging paragraph). And the interest rate to be paid on a particular secured debt under a chapter 13 plan is the subject of much litigation. *See Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). Jackson also testified to her belief that every debt on Schedules D and E/F should be characterized as contingent, unliquidated, and disputed, though she did not know the significance of those characterizations. Jackson did not recognize any of this as legal advice and disputed at trial that she had offered legal advice to any debtor.

Jackson testified that she thinks attorneys and their support staff simply input information into software and prepare petitions and other documents with the push of a button. *See also* Ex. 3 at 80-83. Even more concerning is Jackson's testimony at trial that she believed debtors could achieve the same outcome by using her services as they could by hiring a licensed attorney. Jackson even remarked at one point during the trial that her services were worth two to three thousand dollars, the amount an attorney would charge. Contrary to Jackson's suggestion, the process of advising a prospective debtor involves far more than just filling out the appropriate forms and following a pre-determined set of rules. That is part of it, but many, many legal determinations are made in the course of filling out forms and each individual debtor's situation must be taken into account to determine the appropriate information to include on the forms. Jackson simply does not appreciate the advice and counseling, and sometimes even pre-petition planning, that goes into filing a bankruptcy petition with the help of a licensed attorney.

Jackson's inability to understand the difference between acting as a scrivener by inputting information provided by a debtor and providing legal advice by determining what information should be included on the forms is apparent from Jackson's actions taken after this adversary proceeding was filed. The U.S. Trustee's Amended Complaint alleges that Jackson provided legal advice to debtors when she filled out applications to pay the filing fee in installments and when she filled out Schedule C for her clients. Jackson testified that she interpreted these allegations to mean that she could no longer prepare those documents, *i.e.,* that she could not write or type them. As the Court finds above, she still provided information to the debtors with respect to the information to be included on Schedule C; she just instructed the debtors to write out the documents themselves. When counsel for the U.S. Trustee questioned her about her practice of characterizing every debt as contingent, unliquidated and disputed, Jackson complained that she would not be able to work as a bankruptcy petition preparer if she could not fill out Schedule D and Schedule E/F.

Jackson wholly misunderstood the allegations in this case. Section 110 allows a bankruptcy petition preparer to fill out schedules and statements. But she must do so using only information supplied by the debtor. She cannot tell the debtor what information is needed or make any decisions about what information to include on the documents. It is Jackson's advice regarding what to include on the schedules, not her preparation of the schedules, that violates § 110(e)(2). Even with this explanation, the Court is not confident that Jackson would understand what she can and cannot do when preparing schedules and statements for her clients.

Third, this case involves only a few of the myriad ways that bankruptcy petition preparers can violate § 110. As noted above, the evidence at trial readily proved that Jackson did not file Official Form 119 when she should have, but even without those violations the U.S. Trustee presented evidence of more than 50 *other* violations. A big part of Jackson's defense is that she

did not know her conduct violated the statute. For example, she testified that she did not know she had to sign and print her name, address, and identifying number on each and every document she prepares for filing. This particular requirement is clear and unambiguous, and yet Jackson could not follow it. Jackson seems to have expected that someone would scold her without consequence every time she violated the statute so she could learn from her mistakes. Neither the Court nor the U.S. Trustee is responsible for ensuring that bankruptcy petition preparers are educated on what they can and cannot do.[4] That Jackson could not follow the most basic of the statutory instructions suggests that Jackson will be unable to discern how to comply with the law in more complex situations. The Court is not confident that Jackson can comply with the many other obligations of bankruptcy petition preparers if Jackson is permitted to continue providing such services.

Finally, rather than admit her mistakes in past cases, Jackson attempted to cover them up. She refused to admit that she drafted documents that were very clearly in her handwriting, and she gave testimony regarding the Bolden motion for sanctions that simply was not credible. The Court is therefore unconvinced that Jackson would be able to learn from her mistakes and provide services as a bankruptcy petition preparer without violating § 110. *See Rosario*, 493 B.R. at 354 (preparer "did not appear to grasp" that his actions violated § 110 and when the "gravity of the Defendants' violations should have become apparent, [the preparer] demonstrated a total lack of remorse or reflection, instead becoming more obstinate and flippant in his testimony and in the pleadings submitted to the Court").

---

[4] Some districts host educational programs for bankruptcy petition preparers. This district is not one of them. Such programs are not required under the statute, and this district has chosen not to assist bankruptcy petition preparers in this way, instead leaving it to the preparers themselves to know and understand the law.

55

For all these reasons, the Court concludes that a more narrowly tailored injunction would not be sufficient to prevent Jackson from further violating § 110 or engaging in the unauthorized practice of law. As discussed herein, Jackson repeatedly violated §§ 110(b) and (c) and she flagrantly engaged in the unauthorized practice of law. She did so even after she was warned by Judge Kelley regarding the role of bankruptcy petition preparers and the permissible scope of their services.

Bankruptcy can sometimes be needlessly complicated for the average debtor. But some debtors have more complex situations, and only an attorney can help them navigate the system to achieve the best outcome for their situation. This is why the statute allows bankruptcy petition preparers to just type, period. There are too many traps for the unwary. For better or worse, the law allows individual debtors to navigate the system without the help of an attorney, and if they choose to do so then they must make all the legal decisions on their own. The law does not allow debtors to receive or rely on advice from a bankruptcy petition preparer or other non-attorney.

Two final issues bear mention. Jackson testified that she has provided bankruptcy petition preparer services in other districts, including in Illinois, Texas, and Georgia. Some bankruptcy courts have issued injunctions that are nationwide, preventing persons from acting as bankruptcy petition preparers in any district. *See Briones-Coroy*, 481 B.R. at 742 ("[W]here a bankruptcy petition preparer's violations of 11 U.S.C. § 110 are repetitive and especially if the preparer has demonstrated an ability or willingness to cross jurisdictional borders, a national injunction is appropriate."). The U.S. Trustee has not requested such an injunction, and the Court declines to impose one without briefing on its authority to do so. The Court admonishes Jackson that she must know and understand her obligations under § 110 if she intends to continue acting as a bankruptcy petition preparer in other districts.

Jackson also testified that she has prepared documents for filing in this and other districts without receiving compensation. She often identifies herself as a bankruptcy petition preparer when she does not receive compensation, but § 110 applies only to a person who "prepares *for compensation* a document for filing." 11 U.S.C. § 110(a) (emphasis added). Therefore, the statute does not, by its terms, apply to regulate persons who prepare documents for filing without receiving any compensation for doing so.

The vast majority of Jackson's violations involve her provision of legal advice. She is not an attorney, so she may not provide legal advice to debtors regardless of whether she is a bankruptcy petition preparer under § 110. When faced with non-attorneys who provide legal advice to debtors, some courts have issued injunctions preventing those persons from providing legal advice. It may be that such an injunction would find support in the Seventh Circuit, which has suggested that a federal court can regulate and discipline those who may be providing unauthorized legal advice to litigants in its cases. *See United States v. Johnson*, 327 F.3d 554, 560 (7th Cir. 2003) ("[A] federal court's power to regulate and discipline attorneys appearing before it extends to conduct by nonlawyers amounting to practicing law without a license."). The U.S. Trustee has not requested such an injunction, so the Court's injunction will not apply to any activities by Jackson that are not specifically regulated by § 110. Jackson is admonished, however, that she cannot legally provide legal advice to debtors, whether she receives compensation or not.

## CONCLUSION

For the reasons discussed above, the Court concludes that Jackson repeatedly violated 11 U.S.C. § 110, and that it is appropriate to enter a permanent injunction prohibiting her from acting as a bankruptcy petition preparer in this district. The Court will enter a separate order

setting a schedule for the parties to address the appropriate amount of any fines to be awarded under § 110(*l*).  The Court's final order and judgment will issue following that briefing.

Dated: July 12, 2024

Rachel M. Blise
U.S. Bankruptcy Judge

# APPENDIX – LIST OF CASES

| Case Number | Debtor Name | Chapter | Date Opened | Date Closed | Dismissed/ Discharged |
|---|---|---|---|---|---|
| 17-28792-bhl | Steven H Tolbert | 7 | 09/06/17 | 12/13/17 | Discharged |
| 17-28992-kmp | Westley Owens, Sr. | 7 | 09/11/17 | 10/22/20 | Discharged |
| 17-29160-gmh | William Jackson | 7 | 09/15/17 | 01/02/18 | Discharged |
| 17-31743-svk | Larryn Breante Worthy | 7 | 12/08/17 | 03/14/18 | Discharged |
| 18-22957-bhl | Angela L Foster | 7 | 04/03/18 | 07/24/18 | Discharged |
| 18-23193-svk | Deanna T. Jackson | 7 | 04/10/18 | 07/17/18 | Discharged |
| 18-24128-gmh | Julie L. Roberts | 7 | 04/27/18 | 08/14/18 | Discharged |
| 18-24455-bhl | Bridgette N. Morris | 7 | 05/04/18 | 09/14/18 | Discharged |
| 18-25700-svk | Tyrone L. Trice | 13 | 06/07/18 | 09/14/18 | Dismissed |
| 18-25916-svk | Antoinette Hays | 7 | 06/14/18 | 10/30/18 | Discharged |
| 18-25951-svk | Katrina D Agnew | 7 | 06/15/18 | 08/24/18 | Dismissed |
| 18-26647-svk | Crystal M. Robinson | 7 | 07/09/18 | 09/12/18 | Dismissed |
| 18-26831-svk | Tyrone L. Trice | 13 | 07/13/18 | 01/29/19 | Dismissed |
| 18-26846-kmp | Joseph T. Redzinski | 7 | 07/16/18 | 02/11/20 | Dismissed |
| 18-27042-beh | Shalaundra L Wilder | 13 | 07/20/18 | 12/29/21 | Discharged |
| 18-27169-svk | Georgia Moss | 7 | 07/25/18 | 11/05/18 | Discharged |
| 18-27540-gmh | Lashunda A Roland William D Roland, Sr | 13 | 08/03/18 | 03/04/19 | Dismissed |
| 18-27814-gmh | Adriene Boyd | 13 | 08/14/18 | 05/06/20 | Dismissed |
| 18-28067-bhl | Debra A. Davis | 7 | 08/22/18 | 02/12/20 | Discharged |
| 18-28225-bhl | Rachell O. Brown | 7 | 08/27/18 | 11/19/18 | Dismissed |
| 18-28338-bhl | Tamara M Cooper | 7 | 08/29/18 | 12/19/18 | Discharged |

1

| Case Number | Debtor Name | Chapter | Date Opened | Date Closed | Dismissed/ Discharged |
|---|---|---|---|---|---|
| 18-28811-svk | Crystal M. Robinson | 7 | 09/13/18 | 12/19/18 | Discharged |
| 18-28822-svk | Daquasha L Findley | 7 | 09/14/18 | 01/15/19 | Discharged |
| 18-28866-gmh | Terri L. Powell | 13 | 09/17/18 | 03/02/21 | Dismissed |
| 18-28872-svk | Katrina D Agnew | 7 | 09/17/18 | 12/24/18 | Discharged |
| 18-28900-svk | Annie L. Lipsey | 7 | 09/18/18 | 01/30/19 | Discharged |
| 18-28981-beh | Corey L. Burt, Jr. | 7 | 09/20/18 | 01/03/19 | Discharged |
| 18-29082-gmh | Tiarra F. Cooper | 7 | 09/24/18 | 03/04/19 | Discharged |
| 18-29567-bhl | Walter L. Ference, Sr. | 7 | 10/09/18 | 02/05/19 | Discharged |
| 18-29739-gmh | Larie A. Ellis | 7 | 10/15/18 | 01/25/19 | Dismissed |
| 18-30129-svk | Naturra N Ball | 7 | 10/26/18 | 01/30/19 | Discharged |
| 18-31264-kmp | Tyrone W. Polk, Jr. | 13 | 12/06/18 | 03/08/19 | Dismissed |
| 18-31501-bhl | Dwayne Davis | 7 | 12/14/18 | 02/01/19 | Dismissed |
| 19-20014-bhl | Dovie M Johnson | 7 | 01/02/19 | 04/18/19 | Discharged |
| 19-20015-gmh | Carla B. Gamble | 13 | 01/02/19 | 04/08/19 | Dismissed |
| 19-20142-gmh | Monique N Owens | 7 | 01/07/19 | 05/28/19 | Discharged |
| 19-20143-kmp | Lashun D Bey | 7 | 01/07/19 | 04/11/19 | Discharged |
| 19-20471-kmp | Tyrone W. Polk, Jr. | 7 | 01/18/19 | 02/11/19 | Dismissed |
| 19-20756-gmh | Terry L. Bryson | 7 | 01/29/19 | 05/01/19 | Discharged |
| 19-20818-beh | Thersa Anthony | 13 | 01/31/19 | 10/02/19 | Dismissed |
| 19-21316-bhl | Dwayne Davis | 7 | 02/21/19 | 05/23/19 | Discharged |
| 19-21595-bhl | Larhonda L Elim | 7 | 03/01/19 | 06/05/19 | Discharged |
| 19-21692-beh | Timisha L Swan-Stewart David Stewart, Jr | 7 | 03/06/19 | 06/27/19 | Discharged |

| Case Number | Debtor Name | Chapter | Date Opened | Date Closed | Dismissed/ Discharged |
|---|---|---|---|---|---|
| 19-21906-bhl | Breanna L Fearen | 7 | 03/12/19 | 06/11/19 | Discharged |
| 19-22009-bhl | Juanita J. Stewart | 7 | 03/14/19 | 04/22/19 | Dismissed |
| 19-22459-beh | Annie J. Stewart | 13 | 03/26/19 | 06/12/19 | Dismissed |
| 19-22588-kmp | Shamir A. Jackson | 7 | 03/28/19 | 07/11/19 | Discharged |
| 19-22906-bhl | Rachell O. Brown | 7 | 04/04/19 | 07/22/19 | Discharged |
| 19-23083-kmp | Azaria T Turner | 7 | 04/09/19 | 07/17/19 | Discharged |
| 19-23197-beh | Maurice S. McClendon | 13 | 04/11/19 | 03/31/20 | Dismissed |
| 19-23359-beh | Robin M. Ware Adrian C Ware | 7 | 04/15/19 | 07/29/19 | Discharged |
| 19-23362-kmp | Bonita L Herbert | 7 | 04/15/19 | 08/21/19 | Discharged |
| 19-24841-beh | Jacqueline R. Powell | 7 | 05/16/19 | 09/13/19 | Discharged |
| 19-25080-kmp | Timi D. Townsend | 7 | 05/23/19 | 10/01/19 | Discharged |
| 19-25549-kmp | Kadeidra S Page | 7 | 06/05/19 | 09/17/19 | Discharged |
| 19-26966-beh | David Stewart, Jr. Timisha L. Stewart | 13 | 07/18/19 | 07/27/20 | Dismissed |
| 19-27199-beh | Theresa Anthony | 7 | 07/25/19 | 10/30/19 | Discharged |
| 19-27389-kmp | Duane L Thompson | 7 | 07/31/19 | 09/09/19 | Dismissed |
| 19-27797-bhl | Jalissa J Peel | 7 | 08/12/19 | 12/11/19 | Discharged |
| 19-27951-beh | Lataurus R Butler | 7 | 08/16/19 | 12/03/19 | Discharged |
| 19-28831-bhl | Karen G Davenport | 7 | 09/12/19 | 12/26/19 | Discharged |
| 19-29703-gmh | Sharon D. Giles | 7 | 10/08/19 | 01/17/20 | Discharged |
| 19-29992-bhl | Antwan V. Swan | 7 | 10/17/19 | 01/27/20 | Discharged |
| 19-30619-bhl | Lantae L. Gipson, Jr. | 7 | 11/06/19 | 02/11/20 | Discharged |
| 19-30804-kmp | Alexis J Benson | 7 | 11/13/19 | 02/20/20 | Discharged |

| Case Number | Debtor Name | Chapter | Date Opened | Date Closed | Dismissed/ Discharged |
|---|---|---|---|---|---|
| 19-31408-beh | Franscenna Harris | 7 | 12/06/19 | 04/07/20 | Discharged |
| 19-31461-bhl | Justin N Thompson | 7 | 12/09/19 | 03/16/20 | Discharged |
| 19-31669-beh | Donnell A. Tripp | 7 | 12/17/19 | 03/17/20 | Discharged |
| 19-31844-kmp | Keineka Irby | 7 | 12/23/19 | 04/07/20 | Discharged |
| 19-31856-beh | Latanya M Mccaa | 7 | 12/23/19 | 03/30/20 | Discharged |
| 19-31928-bhl | Carlone R Joseph, Sr | 7 | 12/27/19 | 04/08/20 | Discharged |
| 20-20052-gmh | Nyesha M Carter | 7 | 01/06/20 | 06/15/20 | Discharged |
| 20-20297-kmp | Andrea Humphrey and Rodney D. Humphrey | 7 | 01/15/20 | 04/14/20 | Discharged |
| 20-20298-beh | Maurice S Mcclendon | 13 | 01/15/20 | 04/20/20 | Dismissed |
| 20-20483-kmp | Lashaunda D Gilliam | 7 | 01/22/20 | 04/28/20 | Discharged |
| 20-20486-kmp | Alexis D Townsend | 7 | 01/22/20 | 04/28/20 | Discharged |
| 20-20501-kmp | Nilkkila S Washington | 7 | 01/22/20 | 04/27/20 | Discharged |
| 20-20847-kmp | Zachary D Thompson | 7 | 02/03/20 | 10/18/21 | Discharged |
| 20-20850-beh | Jessyca F Grant | 7 | 02/03/20 | 05/11/20 | Discharged |
| 20-21071-kmp | Robert S Henry | 7 | 02/12/20 | 05/20/20 | Discharged |
| 20-21333-beh | Brian J. Ingram | 13 | 02/21/20 | 03/03/21 | Dismissed |
| 20-21408-gmh | Adriene Boyd | 7 | 02/25/20 | 06/01/20 | Discharged |
| 20-21409-kmp | Ayeshia D Riley | 7 | 02/25/20 | 06/02/20 | Discharged |
| 20-21534-bhl | Jimmie C. Minor | 7 | 02/27/20 | 06/08/20 | Discharged |
| 20-21808-beh | Lashauna M. Sobolik | 7 | 03/06/20 | 04/17/20 | Dismissed |
| 20-21854-kmp | Jazzmin G Boyd | 7 | 03/09/20 | 06/17/20 | Discharged |
| 20-21958-gmh | Sabrina Huggins | 7 | 03/11/20 | 06/22/20 | Discharged |

| Case Number | Debtor Name | Chapter | Date Opened | Date Closed | Dismissed/ Discharged |
|---|---|---|---|---|---|
| 20-22231-beh | Teisha A Mccoy | 13 | 03/18/20 | 06/29/20 | Dismissed |
| 20-22314-kmp | Chimere T. Taylor | 13 | 03/20/20 | 03/04/21 | Dismissed |
| 20-22316-gmh | Casey E. Washington | 13 | 03/20/20 | 09/21/20 | Dismissed |
| 20-22620-kmp | Jasmine L. Jackson | 13 | 04/01/20 | 05/13/21 | Dismissed |
| 20-23334-beh | Lashauna M. Sobolik | 7 | 05/04/20 | 08/11/20 | Discharged |
| 20-23430-kmp | Asteria N. Owens | 7 | 05/08/20 | 06/19/20 | Dismissed |
| 20-23591-beh | Alexis S. Edwards | 7 | 05/15/20 | 06/29/20 | Dismissed |
| 20-23641-kmp | Taquayla R. Rucker | 7 | 05/18/20 | 11/03/20 | Discharged |
| 20-23969-gmh | Taquesha C. Bridges | 7 | 06/01/20 | 09/22/20 | Discharged |
| 20-24021-gmh | Myesha A. Blake | 7 | 06/04/20 | 10/16/20 | Discharged |
| 20-24121-kmp | Tynetta E. Brown | 7 | 06/10/20 | 09/10/20 | Discharged |
| 20-24224-gmh | Jonathan M Brown | 7 | 06/15/20 | 11/13/20 | Dismissed |
| 20-24276-gmh | Darryl R. Anderson | 7 | 06/17/20 | 10/20/20 | Closed w/o discharge |
| 20-24774-beh | Alexis S. Edwards | 7 | 07/08/20 | 10/06/20 | Discharged |
| 20-25376-kmp | Corvette L. Ellis | 7 | 07/31/20 | 11/06/20 | Discharged |
| 20-25517-kmp | Asteria N. Owens | 7 | 08/09/20 | 09/11/20 | Dismissed |
| 20-25542-gmh | Trent M Jordan | 7 | 08/10/20 | 02/19/21 | Dismissed |
| 20-25683-kmp | Celestus W Brown | 7 | 08/14/20 | 09/29/20 | Dismissed |
| 20-26122-gmh | Barbara J. Thomas | 7 | 09/08/20 | 12/15/20 | Discharged |
| 20-26388-kmp | Rachel A. Moore | 7 | 09/22/20 | 01/20/21 | Discharged |
| 20-26658-kmp | Celestus W. Brown | 7 | 10/05/20 | 02/05/21 | Discharged |
| 20-26778-gmh | Terrance L. Bennett | 7 | 10/09/20 | 01/11/21 | Discharged |

| Case Number | Debtor Name | Chapter | Date Opened | Date Closed | Dismissed/ Discharged |
|---|---|---|---|---|---|
| 20-26795-beh | Shaniece S. Yarn | 7 | 10/13/20 | 01/11/21 | Discharged |
| 20-27099-beh | Breshayla L. Lee | 7 | 10/27/20 | 01/28/21 | Discharged |
| 20-27361-kmp | Martha L. Kiflie | 13 | 11/09/20 | 10/03/22 | Discharged |
| 20-28069-kmp | Christina T. Sayavongsa | 13 | 12/18/20 | 06/04/21 | Dismissed |
| 21-20166-beh | Monique J. Ware | 7 | 01/13/21 | 04/12/21 | Discharged |
| 21-20500-kmp | Xavier C. McCaa | 7 | 01/29/21 | 09/02/21 | Discharged |
| 21-20755-gmh | Marleen Sloan | 7 | 02/16/21 | 11/15/21 | Discharged |
| 21-20808-gmh | James W Ferguson, Jr | 7 | 02/18/21 | 05/19/21 | Discharged |
| 21-21426-beh | Calvert D Rucker | 7 | 03/18/21 | 05/06/21 | Dismissed |
| 21-21780-beh | Christy Corine Tolbert | 7 | 03/31/21 | 07/06/21 | Discharged |
| 21-21912-kmp | Carlaia J. Owens | 7 | 04/07/21 | 05/14/21 | Dismissed |
| 21-21949-beh | Towanka S. King | 7 | 04/08/21 | 08/30/21 | Discharged |
| 21-22166-kmp | Latonya S. Lockwood | 7 | 04/16/21 | 07/21/21 | Discharged |
| 21-22352-kmp | Sasha R. Gray | 7 | 04/23/21 | 07/30/21 | Discharged |
| 21-22453-kmp | Devonaire R. Roundtree | 7 | 04/28/21 | 08/18/21 | Discharged |
| 21-22602-kmp | Dominique T. Robinson, Sr. | 7 | 05/04/21 | 08/09/21 | Dismissed |
| 21-23237-beh | Deaira B. Frazier | 7 | 06/03/21 | 08/03/21 | Dismissed |
| 21-23388-kmp | Aundrea M. Hill | 7 | 06/11/21 | 11/22/21 | Dismissed |
| 21-23409-kmp | Rackiya S. Wright | 7 | 06/14/21 | 09/15/21 | Discharged |
| 21-23567-gmh | Trent M. Jordan | 7 | 06/22/21 | 10/28/21 | Discharged |
| 21-24150-beh | Carmen N. Palmer | 7 | 07/23/21 | 11/30/21 | Discharged |
| 21-24151-rmb | Clent B. Williams | 13 | 07/23/21 | 10/26/22 | Dismissed |

6

| Case Number | Debtor Name | Chapter | Date Opened | Date Closed | Dismissed/ Discharged |
|---|---|---|---|---|---|
| 21-24757-gmh | Ashyanna D. Pearson-Young | 7 | 08/30/21 | 12/27/21 | Discharged |
| 21-25059-rmb | Shantelle Edwards | 7 | 09/21/21 | 12/23/21 | Discharged |
| 21-25477-kmp | Devin H. Ward | 7 | 10/14/21 | 02/10/22 | Discharged |
| 21-25484-gmh | Shurone Y Goodlow | 13 | 10/14/21 | 05/03/22 | Dismissed |
| 21-25564-kmp | Alice M. Burnett | 13 | 10/20/21 | 04/18/22 | Dismissed |
| 21-25760-rmb | Kristen D. Walton | 7 | 11/01/21 | 03/11/22 | Discharged |
| 21-26231-gmh | Ralfphel M. Cologn-Turner | 7 | 12/08/21 | 04/08/22 | Discharged |
| 22-20657-gmh | Corey D. Williams | 7 | 02/18/22 | 08/04/22 | Dismissed |
| 22-20825-kmp | Kimberly A. George | 7 | 03/01/22 | 06/02/22 | Discharge |
| 22-21445-kmp | Lashawnda P. Easton | 7 | 04/04/22 | 07/06/22 | Discharge |
| 22-22109-rmb | Kristen D. Walton | 13 | 05/10/22 | 05/03/23 | Dismissed |
| 22-22262-beh | Deaira B. Frazier | 7 | 05/19/22 | 09/15/22 | Closed w/o discharge |
| 22-22512-rmb | Valetha Hunter Grays and Calvin O. Grays | 7 | 06/06/22 | 11/15/22 | Discharged |
| 22-22513-kmp | Samule L. Hill and Aundrea M. Hill | 7 | 06/06/22 | 09/07/22 | Discharged |
| 22-23045-beh | Shareeta R. Dates | 7 | 07/11/22 | 10/12/22 | Discharged |
| 22-23255-kmp | Reginald Futrell, Sr. | 7 | 07/22/22 | 11/16/22 | Discharged |
| 22-23436-beh | Gloria M. Dobbs | 7 | 08/04/22 | 09/22/22 | Dismissed |
| 22-23490-gmh | Willie D. Jefferson, Jr. | 7 | 08/08/22 | 12/21/22 | Dismissed |
| 22-23612-kmp | Jevon H. Flippin | 7 | 08/15/22 | 11/18/22 | Discharged |
| 22-23682-rmb | Jamie M. Brown | 7 | 08/18/22 | 09/27/22 | Dismissed |

7

| Case Number | Debtor Name | Chapter | Date Opened | Date Closed | Dismissed/ Discharged |
|---|---|---|---|---|---|
| 22-23830-kmp | Al Goins, Jr. | 7 | 08/29/22 | 02/27/24 | Discharge |
| 22-23933-beh | Qwanisha L. Mcbride | 7 | 09/02/22 | 12/06/22 | Discharge |
| 22-23991-kmp | Rebecca Lawson | 7 | 09/08/22 | 12/16/22 | Discharge |
| 22-23992-beh | Jessica M. Martin | 7 | 09/08/22 | 12/14/22 | Discharge |
| 22-24033-rmb | Kendra A. Reddic | 7 | 09/12/22 | 04/19/23 | Discharge denied |
| 22-24079-kmp | Christopher L. Jones | 7 | 09/14/22 | 12/19/22 | Discharged |
| 22-24117-kmp | Gwendolyn Y. Spivey | 7 | 09/16/22 | 12/19/22 | Discharged |
| 22-24387-gmh | Tanisha R. Spivey | 7 | 10/05/22 | 01/05/23 | Discharged |
| 22-24590-kmp | Martha A. Wesley | 7 | 10/18/22 | 01/18/23 | Discharged |
| 22-24784-gmh | Venola L. Coleman | 7 | 10/27/22 | 12/07/22 | Dismissed |
| 22-24852-rmb | Dameon D. Garner | 7 | 10/31/22 | 01/31/23 | Discharged |
| 23-20007-kmp | Christopher Arnell Kemp | 7 | 01/04/23 | 03/01/23 | Dismissed |
| 23-20252-beh | Monique R Brown | 7 | 01/23/23 | 04/26/23 | Discharged |
| 23-20500-kmp | Shawntae L Easton | 7 | 02/07/23 | 05/11/23 | Discharged |
| 23-20729-beh | Tanichia K. Harding | 7 | 02/23/23 | 05/25/23 | Discharged |
| 23-20926-rmb | Clent B. Williams | 7 | 03/06/23 | 06/06/23 | Discharged |
| 23-20983-rmb | Sheila L. Wade | 7 | 03/08/23 | 06/07/23 | Discharged |
| 23-21069-rmb | Rhonda S. Johnson | 7 | 03/14/23 | 07/13/23 | Discharged |
| 23-21169-beh | Darthaniel V. Holmes | 7 | 03/17/23 | 07/27/23 | Dismissed |
| 23-21171-rmb | Johnaquian C. Williams | 13 | 03/17/23 | N / A | |
| 23-21459-rmb | Dionandrea R. Bolden | 13 | 04/03/23 | N / A | Dismissed |

| Case Number | Debtor Name | Chapter | Date Opened | Date Closed | Dismissed/ Discharged |
|---|---|---|---|---|---|
| 23-21565-rmb | Sheila A. Evans and Michael H. Evans | 7 | 04/10/23 | 07/13/23 | Discharged |
| 23-21678-kmp | Letha A Ellis | 7 | 04/17/23 | 07/18/23 | Discharged |
| 23-22574-rmb | Melissa M. Whitelaw | 7 | 06/05/23 | 10/05/23 | Discharged |
| 23-22801-kmp | Isaac A Harris | 7 | 06/20/23 | 09/26/23 | Discharged |
| 23-24913-kmp | Yvonne D. Turner Shafi R. Turner | 7 | 10/25/23 | 02/08/24 | Discharged |
| 23-25553-rmb | Brittany T. Darnell | 7 | 11/30/23 | 02/29/24 | Discharged |
| 24-20325-gmh | Kiera L Jackson | 7 | 01/24/24 | 03/07/24 | Dismissed |
| 24-20737-gmh | Jareika S Sanders | 7 | 02/16/24 | N / A | |
| 24-20865-gmh | Joe L. Langford | 7 | 02/26/24 | 06/05/24 | Discharged |
| 24-21006-rmb | David A Mchenry, IV | 7 | 03/01/24 | 06/17/24 | Discharged |
| 24-21122-kmp | Ayeshia D. Riley | 13 | 03/08/24 | N / A | |
| 24-21172-kmp | Ashley D Chesser | 7 | 03/12/24 | 07/11/24 | Discharged |
| 24-21418-kmp | Ryan L Crenshaw | 7 | 03/22/24 | 07/03/24 | Discharged |